**BRITISH AIRWAYS BOARD,[1] Appellant,**

v.

**The BOEING COMPANY, Appellee.**

No. 76–3373.

United States Court of Appeals, Ninth Circuit.

Nov. 8, 1978.

1. This lawsuit was originally brought by British Overseas Airways Corporation ("BOAC"). In response to a suggestion from this Court, counsel for BOAC filed a motion to substitute British Airways Board, BOAC's successor in interest, as plaintiff and appellant. We granted this motion on August 17, 1978. For the sake of clarity, plaintiff-appellant is referred to as BOAC in this opinion.

George N. Tompkins (argued), of Condon & Forsyth, New York City, for appellant.

Keith Gerrard (argued), of Perkins, Coie, Stone, Olsen & Williams, Seattle, Wash., for appellee.

Before CHAMBERS and HUFSTED-LER, Circuit Judges, and RENFREW,* District Judge.

RENFREW, District Judge:

Appellant BOAC appeals from an order of the United States District Court for the Western District of Washington granting appellee The Boeing Company ("Boeing") summary judgment in a suit arising out of the crash of a Boeing 707 near Mt. Fuji, Japan, on March 5, 1966. BOAC, which owned and operated the plane, had sued Boeing for damages, alleging negligent design and manufacture, breach of express and implied warranties, and strict tort liability. On appeal, BOAC contends that the district judge should not have granted summary judgment, because there existed a "genuine issue of material fact" which remained to be resolved at trial, and because all discovery in the case had not been completed. In addition, it claims that the change of venue from the Central District of California to the Western District of Washington was improvidently granted. We hereby affirm the decision of the trial court.

## HISTORY OF THE CASE

This suit was initially filed on May 18, 1973 in the Southern District of New York.[2] After Boeing raised an affirmative defense based on the statute of limitations, BOAC filed a substantially identical "protective" suit on November 9, 1973 in the Central District of California. Both suits were transferred to the Western District of Washington pursuant to 28 U.S.C. § 1404(a) on motion of appellee Boeing.[3]

After completion of preliminary discovery, BOAC moved for partial summary judgment on the strict tort liability claim. Boeing opposed the motion and filed a cross-motion for summary judgment seeking dismissal of the complaint in its entirety. Both parties filed briefs in support of their motions. Oral argument was heard on September 10, 1976. On September 23, 1976, the trial court denied BOAC's motion for partial summary judgment and granted Boeing's motion for summary judgment dismissing the complaint. It concluded that:

---

* Honorable Charles B. Renfrew, United States District Judge for the Northern District of California, sitting by designation.

2. On September 23, 1966, six and one-half months after the plane crash, BOAC and Boeing agreed that no claim for damages would be filed until the final passenger and crew claim against the airline had been disposed of, and that the statute of limitations applicable to the damage claim would be extended for a period of two years following the conclusion of the

last passenger or crew claim. This action was commenced in timely fashion since the last claim was disposed of in November, 1971.

3. Boeing's motion to transfer venue in the California action was granted on April 30, 1974. Its motion to transfer venue in the New York action was granted on May 24, 1974, after the Court of Appeals for the Second Circuit denied BOAC's petition for a writ of mandamus to halt the transfer.

"1. The probable cause of the accident in question was abnormally severe Clear Air Turbulence which imposed excessive loads on the aircraft beyond its design limits.

"2. Although there is undisputed evidence of some fatigue failure in the fin attachment fittings on this aircraft * * there is no evidence indicating that the crash resulted from, or was caused, in whole or in part, by such failure. Instead, the evidence supports the finding * * * that cracks in the fin fittings were not an accident cause factor.

"3. Plaintiff has been unable to produce any evidence that a contributing cause of the accident was a defect in the aircraft."

This appeal followed.

## I. VENUE

■ BOAC's first argument on appeal is that the trial court in the Central District of California abused its discretion in transferring venue in the action to the Western District of Washington. In ruling on Boeing's motion for summary judgment, however, the court below had two suits before it, the California "protective" suit and the suit initially filed in the Southern District of New York. Because the Court of Appeals for the Second Circuit has upheld the transfer of venue from the Southern District of New York to the Western District of Washington, the trial court had at least one of the suits properly before it and we

4. The fin attachment fitting is that part of an aircraft which holds the tail (the vertical stabilizer or fin) to the fuselage. BOAC Opening Brief, at 11 n.5.

5. In its brief, BOAC stated that there were actually six issues of disputed fact:
"1. Whether the subject aircraft which crashed on March 5, 1966 had inherent design or manufacturing defects when it was sold to BOAC by Boeing;
"2. Whether at the time Boeing sold the aircraft to BOAC fatigue cracks existed in the terminal fin attachment fittings of the subject aircraft;
"3. Whether abnormally severe clear air turbulence, exceeding the design strength of

must dismiss BOAC's argument on this issue as moot.

## II. GENUINE ISSUE OF MATERIAL FACT

BOAC and Boeing have different theories as to the cause of the airplane crash. BOAC claims that the accident resulted from defective design and manufacture of the fin attachment fitting of the aircraft [4] which caused the tail of the plane to crack and then to separate in flight. Boeing argues that the accident was due, not to design or manufacturing defects, but to the effect of severe air turbulence encountered when the plane's pilot flew close to Mt. Fuji at too low an altitude.

On appeal, BOAC contends that whether or not its theory is correct, it has at the very least demonstrated a "sharp and substantial dispute" as to the existence of material facts. Specifically, it contends that there is a factual dispute as to whether on the day of the accident there was clear air turbulence ("CAT") in the vicinity of Mt. Fuji of a magnitude in excess of the design strength of the aircraft, and whether, regardless of the clear air turbulence, the crack in the vertical fin attachment fitting was the proximate cause of the crash.[5]

■ Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and [where] the moving party is entitled to

the aircraft, was present at the time of the disintegration of the subject aircraft while in straight and level flight;
"4. Whether the vertical fin attachment fittings failed in flight under normal conditions causing the entire vertical fin to separate from the aircraft resulting in the disintegration of the subject aircraft;
"5. Whether the manufacturing and design defects were the proximate cause of the disintegration of the subject aircraft while in straight and level flight;
"6. Whether the accident was caused by abnormally severe clear air turbulence which imposed gust loads in excess of the design strength of the aircraft." BOAC Opening Brief, at 14–15.

judgment as a matter of law."[6] The burden of establishing that there is no genuine issue of material fact lies with the moving party, in this case Boeing. *Mutual Fund Investors v. Putnam Management Co.,* 553 F.2d 620, 624 (9 Cir. 1977); *Doff v. Brunswick Corp.,* 372 F.2d 801, 805 (9 Cir. 1966), *cert. denied,* 389 U.S. 820, 88 S.Ct. 39, 19 L.Ed.2d 71 (1967); 6 Moore *Federal Practice,* ¶ 56.15[3], at 56–463. However, once Boeing has met that burden by presenting evidence which, if uncontradicted, would entitle it to a directed verdict at trial, Rule 56(e)[7] shifts to BOAC the burden of presenting specific facts showing that such contradiction is possible. *See First Nat. Bank v. Cities Service Co.,* 391 U.S. 253, 288–290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968) (noting absence of "significant probative evidence" in support of contradictory theory); *Mutual Fund Investors v. Putnam Management Co., supra,* 553 F.2d at 624; *Stansifer v. Chrysler Motors Corp.,* 487 F.2d 59, 63 (9 Cir. 1973). This is the burden that BOAC has failed to meet, even though we have drawn all permissible inferences from the evidence in its favor. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (*per curiam*); *Stansifer v. Chrysler Motors Corp., supra,* 487 F.2d at 63; 6 Moore *Federal Practice,* ¶ 56.15[1.00], at 56–405.

■ Boeing produced substantial evidence that any preexisting fatigue crack in the fin attachment fitting was irrelevant to the cause of the accident. First, it introduced BOAC's official accident report (Incident/Accident Report No. 558) which stat-

ed: "The fin fitting was released to Boeing for detailed metallurgical examination and they concluded that these cracks were not an accident cause factor." Boeing Exhibit D–1, at 5. Second, it noted that BOAC's Chief Investigator of Accidents and its Air Safety Advisor had both testified in depositions that neither they nor anyone they knew of disagreed with the findings of this metallurgical examination. Boulding Deposition, at 36–39; Nisbet Deposition, at 87–89. Finally, it pointed out that both the investigator for the Royal Aircraft Establishment and Boeing's Chief of Structures Research had testified that the crack in the fitting was irrelevant to the cause of the accident. Boeing Exhibit D–8; Boeing Exhibit D–6 ("there was no indication from the examination of the wreckage that the failures had been associated with any premature structural failure or malfunction of the aircraft systems").

If BOAC had produced evidence which contradicted these facts, or even evidence from which contradictory inferences could be drawn, we would be constrained to rule that summary judgment was inappropriate. However, after diligently searching the record, and after seeking the assistance of counsel at oral argument, we are unable to find any evidentiary support for BOAC's position.

■ BOAC attempted to meet its burden under Rule 56(e) with two pieces of evidence. First, it introduced the deposition testimony of a Boeing employee that a crack in the terminal fitting *can* lead to a catastrophic accident.[8] However neither

---

6. In reviewing the district court's order granting Boeing's summary judgment motion, we apply the same rule as applied below, *i. e.,* whether there is any genuine issue of material fact. *See Pacific Fruit Express Co. v. Akron, C & Y R. Co.,* 524 F.2d 1025, 1029 (9 Cir. 1975), *cert. denied,* 424 U.S. 911, 96 S.Ct. 1107, 47 L.Ed.2d 315 (1976); *Inland Cities Express v. Diamond Nat. Corp.,* 524 F.2d 753, 754 (9 Cir. 1975); *Radobenko v. Automated Equip. Corp.,* 520 F.2d 540, 543 (9 Cir. 1975).

7. Rule 56(e), as amended in 1963, provides in pertinent part:

"When a motion for summary judgment is made and supported as provided in this rule, an

adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

8. "Q. [A] crack in a critical part such as a terminal fitting can lead to catastrophic failure of the aircraft, isn't that correct?

"A. If not found and properly removed, it would result in complete failure." BOAC Motion for Partial Summary Judgment, Exhibit 15 (Morgan Deposition), at 50, lines 6–10.

that witness nor any other witness produced by BOAC has been able to produce specific facts showing, or even creating an inference, that the crack *did* lead to the accident in question. The only statements we can find in the record that the crash was caused by a defective fin attachment fitting were made by counsel for BOAC. But legal memoranda and oral argument are not evidence, and they cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion where no dispute otherwise exists. *Smith v. Mack Trucks, Inc.,* 505 F.2d 1248, 1249 (9 Cir. 1974).

■ Second, BOAC attempted to avert summary judgment by relying on the report of the Japanese Civil Aeronautics Board ("JCAB"), the agency which investigated the crash. Among other things, the JCAB found that the vertical stabilizer of the tail fin and the left horizontal stabilizer broke away before the rest of the aircraft disintegrated. BOAC claims that this supports an inference that the aircraft first broke apart at the fatigue cracks and that the fatigue cracks therefore caused the crash.[9] However, examination of the aircraft showed that at least *five* in-flight failures had occurred. And in fact, the JCAB report ultimately concluded that "*it was not possible* to establish the break-up sequence of the major portions of the entire aircraft." BOAC Motion for Partial Summary Judgment, Exhibit 8, at 21 (emphasis added).[10]

■ A party opposing a motion for summary judgment must introduce "sufficient evidence supporting the claimed factual dispute * * * to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat. Bank v. Cities*

*Service Co., supra,* 391 U.S. at 288–289, 88 S.Ct. at 1592; *United States v. Gossett,* 416 F.2d 565, 567 (9 Cir. 1969), *cert. denied,* 397 U.S. 961, 90 S.Ct. 992, 25 L.Ed.2d 253 (1970); *McGuire v. Columbia Broadcasting System, Inc.,* 399 F.2d 902, 905 (9 Cir. 1968). A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation. *See Mutual Fund Investors v. Putnam Management Co., supra,* 553 F.2d at 624; *Miller v. New York Produce Exchange,* 550 F.2d 762, 767 (2 Cir. 1977), *cert. denied,* 434 U.S. 823, 98 S.Ct. 68, 54 L.Ed.2d 80 (1977); *Wolf v. Reynolds Electrical & Engineering Co.,* 304 F.2d 646, 649–650 (9 Cir. 1962). Therefore, because we find that BOAC has presented no evidence on which the trier of fact could legally support its theory of the case, we must affirm the decision of the trial court as to this issue.

■ Even if we were to hold that an inference could be drawn from a very selected portion of the JCAB report sufficient to withstand Boeing's motion for summary judgment, we would still be constrained to affirm the trial court. Boeing, too, had a theory explaining the cause of the plane crash. It posited that the plane encountered CAT which was so severe that it exceeded the design strength of the aircraft and caused it to disintegrate. If this theory is supported by uncontradicted evidence within the meaning of Rule 56(c) and (e), then the factual "dispute" regarding the defective fin fitting becomes immaterial. If the CAT exceeded the design strength of the plane, there would have been a major air disaster whether or not the fin attachment fitting was defective. And if the

9. Of course, this fact can only be considered material if the CAT did not exceed the design strength of the aircraft. *See* pp. 952–953, *infra.*

10. BOAC's reliance on the JCAB report is somewhat surprising in that the report fully supports the theory put forth by Boeing that unusually severe CAT, and not a design defect, was the proximate cause of the accident. The JCAB concluded in its report:

"The evidence provided by the aircraft wreckage, the injuries to the victims and the

evidence from the color film suggest that the aircraft suddenly encountered abnormally severe gust loads exceeding the design limit load over Gotemba city and disintegrated in the air in a very short period of time." Moreover, the report specifically states:

"The probable cause of the accident is that the aircraft suddenly encountered abnormally severe turbulence over Gotemba city which imposed a gust load considerably in excess of the design limit."

factual dispute is immaterial, it cannot be held to bar the granting of summary judgment. *Mutual Fund Investors v. Putnam Management Co., supra,* 553 F.2d at 624.

The record contains considerable evidence as to the presence of unusual CAT in the form of a "mountain wave" on the day of the crash. The Aircraft Incident/Accident Report No. 558, prepared by BOAC, quotes from the portion of the JCAB report which concludes that the evidence "suggests that the aircraft suddenly encountered abnormally severe gust loads exceeding [its] design limit load * * *" and that this was the "probable cause of the accident." Boeing Exhibit D–1, at 1–2. The BOAC report also quotes the conclusions of the Meteorological Office, Bracknell, to the effect that

> "[a] strong mountain wave situation existed over Honshu [on the accident date]. * * * [T]here is considerable support for a case of wave resonance to the lee of Fujisan with the possibility of a rotor, in the vicinity of Gotemba where the accident is thought to have occurred * *." *Id.* at 8–9.

In addition, BOAC published in the July, 1968 issue of Air Safety Review a reprint of a report of a former United States Navy fighter pilot who was an eyewitness to the meteorological conditions existing at the time of the accident. Prefaced by an editorial comment that "[i]n March 1966, a BOAC 707 was destroyed in the air by an extreme mountain wave generated by Mt. Fuji * * *," the report noted that as the pilot neared the crash site he was immediately "tossed about * * * violently * * [and] batted around by the turbulence in the lee of Mt. Fuji." Boeing Exhibit D–4, "An Encounter with Severe CAT." Finally, the December 1970 issue of Air Safety Review contained a summary of the findings of the Chief of the First Research Division of the Physiometeorological Research Department of the Japanese Meteorological Institute. This summary also supported Boeing's theory that air turbulence caused the accident. Boeing's Exhibit D–7.

In an attempt to contradict this evidence, BOAC relied on the testimony of two witnesses. First, it noted that its Air Safety Advisor, Captain Thomas Nisbet, testified that he had never heard of a Boeing 707 aircraft having broken up in mid-air solely as a result of meteorological conditions. Nisbet deposition, at 105. However, Captain Nisbet did not say that this break-up could never happen. All he said was that he had never *heard* of it happening. Moreover, earlier in the deposition, he stated that he had no reason to disagree with Boeing's findings that the crack was not relevant to the cause of the crash. Nisbet deposition, at 87–89.

Second, BOAC pointed to the testimony of one of its meteorologists who said that he could not believe the finding of the JCAB that a gust of a magnitude sufficient to break up an airplane could have existed at Mt. Fuji at the time of the accident. Chambers deposition, at 30–31. However, although this deposition was taken on July 26, 1976, prior to the September 10, 1976 oral argument on the summary judgment motion, it was not filed with the court until November 4, 1976, well after Boeing's motion had been granted. Because of its untimely filing and because permission for late filing was neither sought nor granted, the deposition cannot be relied upon at this late date to establish the presence of a material factual issue. *See Sound Ship Building Corp. v. Bethlehem Steel Co.,* 533 F.2d 96, 101 n.3 (3 Cir.), *cert. denied,* 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976); *City Electric, Inc. v. Electrical Workers Local 77,* 517 F.2d 616, 617 (9 Cir.), *cert. denied,* 423 U.S. 894, 96 S.Ct. 194, 46 L.Ed.2d 127 (1975). And even if it could be, we note that the meteorologist later confessed that he did not actually know whether or not a strong mountain wave could break up an aircraft. Chambers deposition, at 33. His testimony, therefore, does not provide a sufficient basis for our overruling the district court's determination that no genuine issue of material fact existed.

We conclude that BOAC has failed to meet its burden under Rule 56(e) to introduce "specific facts" contradicting Boeing's

contention that no genuine issue of material fact exists. After twelve years of investigation and litigation, all BOAC has come up with is supposition, speculation, and conclusory argument of counsel. Because it has presented no evidence "sufficient * * * to require a jury or judge to resolve the parties' differing versions of the truth at trial," even after all permissible inferences have been drawn in its favor, we hereby affirm the decision of the court below as to this issue. See First Nat. Bank v. Cities Service Co., supra, 391 U.S. at 288–289, 88 S.Ct. at 1592; Bryant v. Kentucky, 490 F.2d 1273, 1275 (6 Cir. 1974).

## III. DISCOVERY

BOAC had not completed deposing certain eyewitnesses to the accident, the Japanese investigators, and fifty-four Boeing employees at the time the district court ruled on the summary judgment motions. BOAC Opening Brief, at 35–38.[11] Alleging that these depositions would have been sufficient to create a genuine issue of material fact because they

> "would establish that the design and manufacturing defects * * * were known to Boeing * * * and that these fatigue cracks caused or contributed to the disintegration of the subject aircraft[,]"

BOAC argues that the district court's failure to permit completion of discovery constituted error.[12] BOAC Opening Brief, at 36. We disagree.

---

**11.** A Petition for Letters Rogatory and a Commission to take the depositions was pending before the court at the time summary judgment was granted.

**12.** None of these depositions were alleged to have any bearing on the issue of whether the plane encountered CAT in excess of its design strength. Therefore, although we have no need to reach this issue, we note that a serious question exists as to the materiality of the depositions. See Daily Press, Inc. v. United Press, Int'l, 412 F.2d 126, 135 (6 Cir.), cert. denied, 396 U.S. 990, 90 S.Ct. 480, 24 L.Ed.2d 453 (1969) (no abuse of discretion where additional discovery would not have affected motion for summary judgment).

BOAC's arguments on the discovery issue appear for the first time on appeal. At no point did it request the district court to stay consideration of the summary judgment motions pending completion of discovery,[13] even though the Federal Rules of Civil Procedure provided a specific means for it to do so. When a party opposing summary judgment is unable to present facts "essential to justify his opposition" to the motion, Rule 56(f)[14] authorizes him to file an affidavit setting forth his reasons. See 6 Moore, Federal Practice, ¶ 56.24, at 56–1421. If BOAC had filed such an affidavit, the district court, in its discretion, could have "order[ed] a continuance to permit * * * depositions to be taken or discovery to be had * * *." The airline can hardly argue at this late date that the district court abused its discretion in ruling on the summary judgment motion in light of the fact that BOAC itself failed to pursue the procedural remedy which the Federal Rules so clearly provided. Cf. Mayerson v. Washington Mfg. Co., 58 F.R.D. 377, 384 (E.D.Pa.1972) (motion for continuance to seek additional discovery denied as requirements of Rule 56(f) not met).

Furthermore, even though BOAC moved for a continuance of the trial date pending completion of discovery, it never explained to the court why the depositions were necessary. Except for the brief statement at oral argument that the uncompleted discovery would "further substantiate" BOAC's allegations that the fatigue cracks caused the accident by causing the fin to

---

**13.** BOAC agreed to the September 10th hearing date on the summary judgment motion by stipulation signed on August 25, 1976.

**14.** "Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

break off, BOAC never gave the court any reason to believe that the discovery would create a genuine dispute over a material fact. Even when BOAC moved for reconsideration of the court's ruling on October 1, 1976, it failed to argue that the uncompleted discovery would unearth a genuine issue of material fact. It was not until October 26, thirty-one days after the case was decided, and two weeks after it was appealed, that BOAC first suggested the critical nature of the missing depositions. In light of this delay, it is hard for us to consider the district court's failure to anticipate the significance of the depositions an abuse of discretion.

BOAC cites a number of cases in its brief for the proposition that a plaintiff should have an opportunity to conduct discovery on issues pertaining to a summary judgment motion, and that this discovery should be permitted prior to the consideration of the motion. However, these cases are distinguishable from the case at bar. For in the cases cited, plaintiffs had no prior opportunity to develop the evidence sought, and the evidence itself was critical to the issues in the case. *See, e. g., Egelston v. State University College at Genesco,* 535 F.2d 752, 754 (2 Cir. 1976) (dismissal of a sex discrimination case without allowing plaintiff any discovery was error); *Alghanim v. Boeing Co.,* 477 F.2d 143, 148 & n.9, 149 (9 Cir. 1973) (Rule 56(f) motion should have been granted to permit plaintiff time to file personal affidavit from residence in Kuwait; additional discovery allowed "[i]nasmuch as further proceedings must be had \* \* "); *Ward v. United States,* 471 F.2d 667, 670 (Rule 56(f) motion should have been granted where there had been no discovery at all on critical negligence issue). By contrast, in the instant case BOAC had sufficient opportunity to present evidence on the causation issues to the district court. The summary judgment motions were heard in September, 1976, over ten years after the plane crash. Even if BOAC had been unable to obtain critical depositions prior to the hearing date, it should have filed a Rule 56(f) motion rather than have waited until well after the district court rendered its decision before raising the issue for the first time.

For these reasons we hereby affirm the decision of the district court denying BOAC's motion for partial summary judgment and granting Boeing motion for summary judgment dismissing the action.