Agnes **KOEHLER**, et al., Plaintiffs,

v.

Daniel L. **PULVERS**, et al., Defendants.

Civ. No. 82–1076–E.

United States District Court,
S.D. California.

Jan. 30, 1985.

As Amended April 8, 1985.

---

Law Offices of Michael J. Aguirre, Michael J. Aguirre, San Diego, Cal., for plaintiffs.

Lewis, D'Amato, Brisbois & Bisgaard, R. Gaylord Smith, Hector E. Salitrero, San Diego, Cal., for defendant Jeffrey M. Cheyne.

## MEMORANDUM DECISION

ENRIGHT, District Judge.

### BACKGROUND

Plaintiffs filed this action on August 25, 1982, alleging registration violations and misrepresentations in the sale of securities in the "21–31" limited partnership. The developer defendants formed this partnership to own and develop real property consisting of an office building and adjacent lots situated at 2131 Third Avenue, San Diego, California, including Lots A–D inclusive, of block 246, and Lots H, I, and J of block 247.

Three types of security interests were sold: limited partnership interests in 21–31, fractionalized trust deed interests in Lots A–D secured by the office building, and fractionalized trust deed interests in Lot J, a parcel adjacent to the office building. According to the Fourth Amended Complaint, the Lot J securities were sold during October 1981, the Lot A–D securities were sold from April to July 1980, while the 2131 limited partnership interests were sold from August to December 1980.

The complaint alleges that the developer defendants issued securities in violation of sections 5 and 12(1) of the Securities Act of 1933, and sections 25110, 25120, 25130, and 25503 of the California Corporations Code. It also alleges issuance by means of misrepresentations, omissions, and fraudulent practices in violation of sections 17(a) and 12(2) of the Securities Act of 1933, section 10(b) of the Securities Exchange Act of 1934, Rule 10b–5, and section 25401 of the California Corporations Code. Defendants are alleged to have overencumbered the project, diverted funds to other projects, purchased the realty at an inflated price and in an interested transaction, concealed the interrelated nature of the 21–31 limited partnership and trust deed offerings, concealed the unlawful status of the claimed registration and qualification exemptions, and misrepresented the amount of financing secured and the intended use of proceeds received.

On December 10, 1984, defendant Jeffrey Cheyne's motion for summary judgment came on for hearing.[1] This motion sought an adjudication that there were no federal claims pending against him, and dismissal of the pendent state claims or, in the alternative, clarification of the federal claims pending, and summary judgment as to the pendent claims.

Because the Third Amended Complaint appeared to lack the particularity required by Federal Rule of Civil Procedure 9(b), this court directed plaintiffs to file a Fourth Amended Complaint to reflect evidence adduced by discovery and submitted in opposition to Mr. Cheyne's motion. The hearing was continued to January 9, 1985, permitting Mr. Cheyne to renew his motion or otherwise challenge the Fourth Amended Complaint at that time.

On December 14, 1984, plaintiffs filed their Fourth Amended Complaint, alleging against defendant Cheyne the sale of unregistered securities in the First Cause of Action, the sale of unqualified securities in the Second Cause of Action, federal and state securities fraud in the Third Cause of Action, breach of fiduciary duty in the Fourth Cause of Action, negligent misrepresentation in the Seventh Cause of Action,

---

**1.** The evidence submitted on this motion indicates that defendant Cheyne acted as counsel to the general partner of the 2131 partnership (Common Sense Capital Corporation (herein "CSCC")), as well as some of its officers, from approximately February 1979 to September 1982. It also indicates that he served as counsel to the 2131 limited partnership from approximately May 1980 to September 1982. Plaintiffs allege that defendant Cheyne, as legal counsel, aided and abetted, or participated in, the alleged fraudulent acts and registration and qualifications violations more particularly described above.

and legal malpractice in the Tenth Cause of Action.

On January 9, 1985, Mr. Cheyne's renewed and alternative motions for summary judgment or dismissal, as well as motions for a continuance of trial and a reopening of discovery, came on for hearing. After considering oral argument, this court vacated the dates for pretrial hearing and trial set for January 14, 1985 and January 22, 1985, resetting them March 4, 1985 and March 19, 1985, respectively. The remaining issues were taken under submission and are addressed herein.

## DISCUSSION

### I.

#### Motion for Summary Judgment

Defendant Cheyne urges summary adjudication on the purported grounds that this court lacks subject matter jurisdiction. It is his position that no federal claims are pending against him and that, in the absence of an independent basis for federal jurisdiction, the pendent claims should also be dismissed. *Owen Equipment and Erection Co. v. Kroger*, 437 U.S. 365, 376, 98 S.Ct. 2396, 2404, 57 L.Ed.2d 274 (1978).

While the federal antifraud claims of the Third Amended Complaint may have lacked the particularity required by Federal Rule of Civil Procedure 9(b), plaintiffs' evidence in opposition to defendant's summary judgment motion indicated controverted issues of fact to Mr. Cheyne's participant and aider and abettor liability under federal securities fraud and registration provisions. Accordingly, plaintiffs were granted leave to file a Fourth Amended Complaint. As the discussion below indicates, the Fourth Amended Complaint's federal claims largely survive defendant Cheyne's accompanying motion to dismiss. The motion for

**2.** Federal Rule of Civil Procedure 12(b)(6) provides in pertinent part:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are

summary judgment for lack of subject matter jurisdiction accordingly lacks merit.

### II.

#### Motion to Dismiss

Mr. Cheyne's moving papers and argument at hearing urge the court to treat portions of his motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) as one for partial summary judgment. The court will indicate in each instance where it goes beyond the complaint and treats the motion as one for partial summary judgment.[2]

#### A. *Section 12(1) Claim*

The First Cause of Action of the Fourth Amended Complaint alleges participant liability against Mr. Cheyne for the sale of securities in violation of the registration provision of section 12(1) of the Securities Act of 1933 (15 U.S.C. § 77*l*). Defendant Cheyne contends this claim must be dismissed as barred under the applicable one year statute of limitations, section 13 of the 1933 Securities Act (15 U.S.C. § 77m).

■ This issue was previously considered on defendant Cheyne's motion to dismiss the Second Amended Complaint [*See* Memorandum Decisions dated March 29, 1984 and October 5, 1984]. Those decisions indicate that section 13's one year statute of limitations is absolute, and not subject to equitable tolling. This conclusion of law is hereby reaffirmed. Because the purchase dates in the Fourth Amended Complaint appear to vary in part from those alleged in the Second Amended Complaint, however, clarification of prior holdings is in order.

■ Plaintiffs originally filed this action on August 25, 1982. Accordingly, the determination with regard to the Lot J investors' section 12(1) claims is reaffirmed.

> presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

They purchased their interests in October 1981, clearly within the applicable one year limitations period. [*See* Memorandum Decision dated March 29, 1984].

With regard to all other investors, this court's prior rulings indicate that their section 12(1) claims are time barred if they purchased their interests before August 25, 1981. From the purchase dates listed on the face of the Fourth Amended Complaint, this appears to exclude the claims of all investors, except those of the Lot J plaintiffs.[3]

Mr. Cheyne additionally contends that the section 12(1) claim should be dismissed as to the fractionalized trust deed investors because he did not draft any offering memorandum or prospectus for the fractionalized trust deed sales. In support of this contention, Mr. Cheyne submits his own declaration. That declaration states, in pertinent part, that he was never retained by the developer defendants to advise in connection with the trust deed sales, that he was never retained to prepare offering documents in connection with the trust deed offerings, and that he provided no assistance regarding the trust deed sales.

On this issue, defendant Cheyne goes beyond the Fourth Amended Complaint's allegations. Because plaintiffs have submitted opposing evidence, the court treats this issue as a motion for partial summary judgment. Fed.R.Civ.P. 12(b).[4]

It appears to be defendant's premise that if one does not communicate directly or by writing with the investor, he cannot incur participant liability under section 12 of the 1933 Securities Act. Only if this were an accurate statement of the law would Mr.

Cheyne's declaration entitle him to favorable summary adjudication, assuming of course that his declaration stood uncontroverted. His premise, however, appears inaccurate.

■ The fact that Mr. Cheyne did not directly sell the trust deed interests, and the fact that he did not draft the applicable prospectus does not insulate him from liability. The Ninth Circuit Court of Appeals held in *S.E.C. v. Murphy*, 626 F.2d 633, 649–52 (9th Cir.1980), that one not in privity of contract with an investor may be liable under section 12 if his acts were a substantial factor in bringing about the transaction. Liability based on this substantial factor test, called "participant" liability, has been likened to aider and abettor liability: "We note little difference between the scope of liability under aider and abettor theory and that under the participation theory relied upon in *S.E.C. v. Murphy* ...." *Admiralty Fund v. Jones*, 677 F.2d 1289, 1295 n. 4 (9th Cir.1982) (reversing summary judgment under § 12(2) in favor of an attorney alleged responsible for issuer's decision that security not bear a restrictive legend).

This court has serious doubt whether Mr. Cheyne's declaration adequately carries his initial burden of demonstrating the absence of a genuine issue to his alleged nonparticipation in the trust deed offerings. His declaration states primarily what he was not retained to do; it is ambiguous as to what he actually did. It is questionable whether it forecloses all conduct potentially supportive of participant liability under the First Cause of Action. The court need not decide this question, however, because

---

**3.** Because plaintiffs base their section 12(1) claims on allegations of unlawful offer and sale, as opposed to unlawful delivery, the date of payment properly commences the running of the limitations period. *Eriksson v. Galvin,* 484 F.Supp. 1108, 1119 (S.D.N.Y.1980); *cf. Katz v. Amos Treat & Co.,* 411 F.2d 1046, 1054 n. 7 (2d Cir.1969).

**4.** Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to prevail as a matter of law. *See* Fed.R.Civ.P. 56(c). Once the moving party

has met his initial evidentiary burden of showing that his motion is properly supported, the adverse party must come forward with specific facts showing that there remains a genuine factual issue for trial. *See* Fed.R.Civ.P. 56(e). The opponent may not rest on his pleadings; he must offer some significant evidence as to any fact claims to be disputed. *See, e.g., British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 951 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979).

plaintiffs' opposing evidence controverts Mr. Cheyne's declaration in large measure.

Plaintiffs' documentary and declaratory evidence indicates that, at a minimum, Mr. Cheyne played a greater role in the trust deed offerings than his statement that he did not assist in the trust deed "sales" might otherwise suggest. Plaintiffs' evidence indicates that Mr. Cheyne knew that CSCC principals were selling limited partnership and trust deed interests in the same project, and that he advised them to sell the fractionalized trust deeds through a separate entity, Western Investors Network, Inc., to avoid the appearance of an integrated offering, and preclude monitoring of the trust deed sales. It also indicates that he handled the escrow negotiations and drafted the escrow instructions enabling the 2131 partnership to purchase the 2131 Third Street realty, knowing that funds raised from the trust deed investors were being used wrongfully to finance the downpayment. Plaintiffs' evidence further indicates that Mr. Cheyne advised CSCC and Western Investors Network, Inc. concerning the preparation of the fractionalized trust deeds, and that he prepared the form fractionalized trust deed used to record the Lot I fractionalized trust deed.[5]

■ It is the court's opinion that plaintiffs controvert in significant part Mr. Cheyne's statement that he did not assist the sale of trust deed interests. Accordingly, material issues of fact remain regarding the extent of his participation in the trust deed transactions as a whole.

### B. *Section 25503, California Corporations Code*

California Corporations Code section 25503 creates a cause of action in rescission for the sale of securities in violation of the Code's qualification requirements. This court previously held the two year limitations provision of California Corporations Code section 25507 to be absolute, and not subject to tolling by proof of fraudulent concealment. [*See* Memorandum Decision dated October 5, 1983]. Because this action was filed on August 25, 1982, the section 25503 claims of all plaintiffs purchasing prior to August 25, 1980 are time barred.

■ Plaintiffs appear to adopt for the first time in opposition to this motion the position that the date the securities were delivered, rather than the date of payment, begins the running of the limitations period. It is their position that the date plaintiffs paid for their interests constituted an "order," and that the purchase date for limitations purposes is the date of delivery which is said to "consummate" the sale. *Competitive Associates, Inc. v. Children's World, Inc.*, CCH Fed.Sec.L.Rep., p. 94,063 (S.D.N.Y.1973). The *Competitive Associates* decision on which plaintiffs rely, however, is not controlling.

That case considered the one year limitations period applicable to a federal section 12(1) action, not the two year limitations period applicable to the section 25503 action at issue. Moreover, to the extent the *Competitive Associates* decision is offered as analogous authority, it is not persuasive.

First, section 12(1) of the Securities Act of 1933 predicates liability on the delivery of unregistered securities in addition to their offer and sale—if such unlawful delivery is alleged as the basis of the claim. *See, e.g., Eriksson v. Galvin*, 484 F.Supp. 1108, 1119 (S.D.N.Y.1980). In contrast, section 25503 of the California Corporations Code creates liability only for the sale of unlawfully unqualified securities. Accordingly, where delivery may take on independent significance in a section 12(1) action, this is not generally the case in a section 25503 action.

Second, the finding in *Competitive Associates* that payment constitutes only an offer is not a necessary conclusion; at best, it is a permissive inference which, in this

---

**5.** From what the court is able to gather, it appears that the Lot J investors were told that they were purchasing an interest secured by a trust deed on Lot J, but that their interest was first recorded on Lot I, only to be subsequently rerecorded on Lot J.

instance, flies in the face of plaintiffs' own statement of their claim.

The Fourth Amended Complaint alleges the sale by defendants, and purchase by plaintiffs, of unlawfully unqualified securities. It lists as date of purchase the date plaintiffs paid for their securities. Absent persuasive authority to the contrary, this court is not inclined to adopt for statute of limitations purposes a purchase date different from that pleaded in the complaint.

Finally, California courts have stated that a short limitations period is necessary in light of section 25503's rather simple remedy in order to prevent investors from shifting the risk of investing to the seller. *Bowden v. Robinson,* 67 Cal.App.3d 705, 136 Cal.Rptr. 871 (1977). The two year limitations period for section 25503 actions is already twice as long as that available under the arguably analogous federal cause of action at issue in *Competitive Associates.* California courts faced with this longer statute of limitations at the outset would appear to have less reason to adopt the expansive analysis of *Competitive Associates,* particularly in light of the articulated policy favoring a short and absolute limitations period for the action.

Accordingly, this court declines to adopt the purchase analysis urged by plaintiffs. The payment date is the purchase date and the date from which the limitations period runs. Section 25503 claims based on purchases prior to August 25, 1980 are dismissed as time barred.[6]

### C. *Antifraud Claims*

The Third Cause of Action alleges that defendant Cheyne both directly participated in and aided and abetted fraud in the sale of securities, in violation of sections 12(2) and 17(a) of the Securities Act of 1933 (15 U.S.C. §§ 77*l*(2) and 77q(a) respectively), section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)), Rule 10b–5, 17 C.F.R. § 240.10b–5, and California Corporations Code section 25401. This cause of action is alleged in such particularity that it borders on the evidentiary. The basis for the alleged fraud includes detailed allegations of fraudulent business practices, fraudulent concealment, and misrepresentations and omissions in the sale of both the 2131 limited partnership interests and the fractionalized trust deed interests.

Mr. Cheyne's instant motion asserts that this cause of action should be dismissed as to all theories and all investors, but for different reasons.

### 1) *Trust Deed Investors*

■ It is defendant's position that the section 12(2) claim must be dismissed because he was not a "seller" of the fractionalized trust deed interests, and because his involvement in the offerings does not support participant liability as a substantial factor in the sales.[7] The issue of participant liability under section 12 of the Securities Act of 1933 is fully addressed above with regard to the First Cause of Action. There remain material issues of fact regarding the extent of Mr. Cheyne's participation in the trust deed transactions. On this state of the record it is not possible to rule as a matter of law that Mr. Cheyne was not a "seller" of trust deed interests within the meaning of section 12(2). *See Admiralty Fund v. Jones,* 677 F.2d 1289, 1294–95 (9th Cir.1982).

■ Defendant contends with regard to section 17(a) and Rule 10b–5 that there can be no liability to the trust deed purchasers because he did not write the prospectus,

---

**6.** This conclusion is in accord with that reached in the only published decision known to the court which applies Cal.Corp.Code section 25507's limitation period to even remotely similar circumstances. "The latest event that serves to start the applicable statute of limitations running on these securities transactions was the receipt and acceptance by [defendants] of plaintiffs' checks which was the same event used herein to date the individual transactions." *Malik v. Universal Resources Corp.,* 425 F.Supp. 350, 361 n. 48 (S.D.Cal.1976).

**7.** Mr. Cheyne goes beyond the complaint and relies on his declaration to support his contentions on this issue. The court treats defendant's motion on this issue as one for partial summary judgment. Fed.R.Civ.P. 12(b).

was not aware that anything was "incorrect," and even if he knew something was incorrect, that he owed no duty of disclosure to those investors.[8] Mr. Cheyne's argument on this motion to dismiss is cast as if aider and abettor liability were not alleged, or was otherwise unavailable. Aider and abettor liability is clearly available under Rule 10b–5 and section 17(a) (*Admiralty Fund v. Tabor*, 677 F.2d 1297, 1299 (9th Cir.1982); *cf. Stephenson v. Calpine Conifers II, Ltd.*, 652 F.2d 808, 815 (9th Cir. 1981) (§ 10(b) and 17(a) are similar in nature)), and it is alleged. Mr. Cheyne may be liable as an aider and abettor if he knew that those for whom he worked were committing a fraud and he substantially aided the overall enterprise. *Admiralty Fund v. Jones*, 677 F.2d 1289, 1296 (9th Cir.1982).

While his motion is fashioned as one pursuant to Fed.R.Civ.P. 12(b)(6), Mr. Cheyne does not challenge the adequacy of pleading. Rather, he argues facts without specifically referencing his declaration, stating that he did not submit written statements to the trust deed investors, and that he was not aware that the investors were being misled.

By placing his knowledge at issue, however, Mr. Cheyne does not show that plaintiffs have failed to state a claim; he merely raises an issue of material fact which, on this state of the record, stands controverted at least in part by opposing proof. Similarly, the asserted lack of direct communication with investors is equally ineffectual. This court has already indicated in discussion above that material issues of fact remain concerning the scope of Mr. Cheyne's involvement in the sale of the trust deed securities.

Whether Mr. Cheyne's motion on this issue is treated as one to dismiss or for partial summary judgment, he is not entitled to relief. The trust deed investors' section 17(a) and 10b–5 claims are well

pleaded, and on the current state of the record, it can not be said that Mr. Cheyne did not knowingly and substantially aid the developer defendants' commission of the alleged fraud.

### 2) *The 2131 Limited Partnership Interests*

Defendant Cheyne contends that the 2131 limited partnership investors' securities fraud claims must be dismissed because his opinion letter, which became part of the prospectus and indicated that the offering was exempt from registration and qualification, was true and correct on its face. The plaintiffs have contended from the outset of this litigation that the prospectus contained numerous false statements, omissions and half truths, including the conclusion that the offering was exempt from registration.

Defendant submits a copy of his opinion letter in support of his contention. Plaintiffs have been afforded an opportunity to respond with opposing evidence. Accordingly, the motion on this issue will be treated as one for partial summary judgment. Fed.R.Civ.P. 12(b).

■ Mr. Cheyne fails to carry his initial burden of demonstrating the absence of a genuine issue of material fact to the limited partner investors' Rule 10b–5, and section 12(2), 17(a), and 25401 claims. It is his position that because his opinion of exempt status is conditioned upon representations attributed to the general partner, as well as the manner of offering and selection of prospective investors, that in no event can it result in direct, participant, or aider and abettor liability. He offers neither affidavits nor other proof, however, to substantiate the truth or utterance of the statements upon which the opinion is conditioned or to establish that he had a reasonable basis for accepting them as true.

---

**8.** Defendant's reliance on *Chiarella v. United States,* 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980), and *Dirks v. S.E.C.,* 463 U.S. 646, 103 S.Ct. 3255, 77 L.Ed.2d 911 (1983), appears entirely misplaced. Those cases are inapposite. They consider the affirmative disclosure duty of a corporate insider, or of his "tippee," when trading publicly held stock on nonpublic or inside information. This case, in contrast, does not concern the insider's duty to disclose or refrain from trading.

Because defendant fails to carry his initial burden of showing that there is no genuine issue of fact with evidence which, if uncontroverted, would entitle him to a directed verdict at trial, his motion must fail. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 950–51 (9th Cir.1978), *cert. denied* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Moreover, plaintiffs respond with declarations and other proof suggesting that Mr. Cheyne knew but failed to disclose that the offering could be integrated with the trust deed sales in the same project, which integration would render the asserted exemption inapplicable. The opposing evidence also indicates that Mr. Cheyne had reason to know that the limited partnership interests were being offered in a manner contrary to that upon which the opinion letter conditioned exemption, and that prior to the close of all sales, Mr. Cheyne knew that partnership funds were being unlawfully diverted to other projects.

Accordingly, even if the defendant had shown that his opinion was not false standing in isolation, omissions and half truths are asserted which leave material issues of fact for trial, particularly concerning issues relevant to aider and abettor liability.

### D. *Common Law Claims*

The Fourth Amended Complaint alleges against Mr. Cheyne three common law torts: breach of fiduciary duty (Fourth Cause of Action); negligent misrepresentation (Seventh Cause of Action); and legal malpractice (Tenth Cause of Action). Defendant seeks dismissal of each of these claims on the grounds that he owed plaintiffs no duty, and in the absence of a duty, there was no tort. The motion is only directed to the claims of trust deed investors.[9]

#### 1) *Breach of Fiduciary Duty*

■ This claim alleges that Mr. Cheyne owed a fiduciary duty to plaintiffs as coun-

sel to the 2131 limited partnership. It also alleges that the developer defendants owed a fiduciary duty to plaintiffs, and that Mr. Cheyne conspired in their breach of this duty by advising them how to violate their obligations while maintaining the appearance of propriety. The developer defendants' wrongful acts include diverting 2131 funds, overencumbering the 2131 project, taking excessive fees, and concealing the fact that the securities had not been sold in a manner making registration unnecessary.

Defendant relies on his declaration wherein he states that, in contrast to the 2131 limited partnership offering, he drafted no opinion or prospectus ultimately distributed to the trust deed investors. He argues that because he did not communicate directly with those investors, no fiduciary duty, and thus no duty of disclosure, arose. As with each of the common law claims, he urges that the decision *Goodman v. Kennedy*, 18 Cal.3d 335, 134 Cal. Rptr. 375, 556 P.2d 737 (1976), compels summary adjudication.

As previously mentioned, the initial burden on this motion requires that defendant come forward and show that there is no genuine issue of fact with evidence which, if uncontroverted, would entitle him to a directed verdict at trial. *British Airways Bd. v. Boeing Co., supra,* 585 F.2d at 950–51.

Assuming for argument sake that defendant owed no independent fiduciary duty, the Fourth Cause of Action alleges that he conspired in the developer defendants' breach of their fiduciary duty. Under California's law of civil conspiracy, "[a]s long as two or more persons agree to perform a wrongful act, the law places civil liability for the resulting damage on *all* of them, regardless of whether they actually commit the tort themselves. [Citations.]" *Wyatt v. Union Mortgage Co.*, 24 Cal.3d 773, 784, 157 Cal.Rptr. 392, 598 P.2d 45

9. Mr. Cheyne fashions his motion as one both to dismiss and for partial summary judgment. His counsel urged at the hearing that it be treated as a motion for summary judgment. Because the court takes into consideration proof offered by defendant, the motion on these claims is treated as one for summary judgment. Fed.R.Civ.P. 12(b).

(1979) (emphasis in original). "California has long adopted the view that an attorney may not with impunity, either conspire with a client to defraud or injure a third person or engage in intentional tortious conduct toward a third person. [Citations.]" *Roberts v. Ball, Hunt, Hart, Brown & Baerwitz,* 57 Cal.App.3d 104, 109, 128 Cal.Rptr. 901 (1976). Defendant submits no evidence or argument to this conspiracy aspect of the claim. Absent a more comprehensive showing which precludes liability for civil conspiracy, defendant fails to carry his initial burden, and his motion on this issue necessarily fails.

### 2) *Negligent Misrepresentation and Malpractice*

The Tenth Cause of Action in malpractice is directed against defendant Cheyne only, while the Seventh Cause of Action for negligent misrepresentation is also directed against the developer defendants and contains allegations of conspiracy among all defendants. As to Mr. Cheyne, however, the alleged culpable conduct is coterminous under each claim.[10] Both defendant and plaintiffs brief the motion on these claims as one for summary judgment. It will be treated as such. Fed.R.Civ.P. 12(b).

Under California law, an attorney's liability for negligent legal advice is limited to those plaintiffs to whom he owes a duty of care. Such duty extends to third persons not his clients, "if the third person ... was intended to be benefitted by his performance [and] is injured by his negligent execution of that duty." *Roberts v. Ball, Hunt, Hart, Brown & Baerwitz,* 57 Cal. App.3d 104, 110, 128 Cal.Rptr. 901 (1976). The existence of such a duty is a question of law and depends upon a judicial weighing of policy considerations for and against imposing liability under the circumstances. *Goodman v. Kennedy,* 18 Cal.3d 335, 342, 134 Cal.Rptr. 375, 556 P.2d 737 (1976). Among the factors to be balanced are the following:

> [T]he extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm.

*Id.* at 343, 134 Cal.Rptr. 375, 556 P.2d 737.

At present, California decisional law extends the attorney's duty of care to third persons not clients to two classes of plaintiffs: persons a testator intended to benefit under his will (*see Heyer v. Flaig,* 70 Cal.2d 223, 74 Cal.Rptr. 225, 449 P.2d 161 (1969); *Lucas v. Hamm,* 56 Cal.2d 583, 15 Cal. Rptr. 821, 364 P.2d 685 (1961)); and, persons supplied with the attorney's advice with the attorney's knowledge and with the intent that they rely on it to confer a benefit upon the client (see *Roberts v. Ball, Hunt, Hart, Brown & Baerwitz, supra,* 57 Cal.App.3d 104, 128 Cal.Rptr. 901) (providing letter opining that client organization was a general partnership, without revealing doubt to this conclusion, knowing that plaintiff was to rely on this representation by loaning money to the client).

Defendant Cheyne seeks dismissal of the claims of the trust deed investors on the grounds that they were never his clients and, in contrast to the limited partnership investors, that he never authored an opinion or prospectus intended for their re-

---

**10.** While the negligent misrepresentation claim incorporates an allegation of civil conspiracy among all defendants, this basis of liability appears unavailable. Unlike actual fraud, the tort of negligent misrepresentation does not include the elements of knowledge of false statement with intent to deceive. The act of conspiracy requires two or more persons agreeing to commit intentionally a wrongful act. *See, e.g., Wyatt v. Union Mortgage Co.,* 24 Cal.3d 773, 784–85, 157 Cal.Rptr. 392, 598 P.2d 45 (1979).

This court is unaware of California decisional law imposing liability for conspiring to commit negligence. The allegation of civil conspiracy appears inherently inconsistent with the allegation of an underlying act of negligence. Additionally, the same policy considerations limiting an attorney's liability for negligent misrepresentation (*see* discussion *supra*) would apply equally where plaintiff alleges a conspiracy pursuant to such negligence.

liance. His argument is supported by his own declaration, and his position is well taken. While plaintiffs have supplied controverting evidence indicating Mr. Cheyne contributed to the trust deed offering, this evidence does not controvert Mr. Cheyne's denial that his advice concerning the trust deed transactions was ever communicated to or relied upon by the trust deed investors. Plaintiffs' opposition to this aspect of the claim is limited to legal argument.

Plaintiffs contend that this case falls within the umbra of the holding of *Roberts v. Ball, Hunt.* That case is distinguishable, however. In *Roberts v. Ball, Hunt,* the attorneys gave a written opinion for the express purpose of its being shown to and relied upon by plaintiff. Here, in contrast, there stands Mr. Cheyne's uncontroverted statements that his advice affecting the trust deed transactions was not communicated to the investors. This lack of intent to influence the nonclient plaintiffs distinguishes the instant matter from the *Roberts v. Ball, Hunt* decision, just as it distinguishes that case from the decision in *Goodman v. Kennedy, supra,* 18 Cal.3d 335, 134 Cal.Rptr. 375, 556 P.2d 737.

In *Goodman v. Kennedy,* the defendant attorney negligently advised his clients, officers of a corporation, that their sale of stock issued as dividends would not jeopardize the corporation's registration exemption. It did, however, resulting in a depreciation of the stock's value. Those who purchased from the selling officers sued the opining counsel for, *inter alia,* negligence. In holding that, as a matter of law, defendant did not owe plaintiffs a duty, the court distinguished the *Roberts v. Ball, Hunt* precedent:

> We are therefore not concerned with such cases as *Roberts v. Ball, Hunt, Hart, Brown & Baerwitz,* (citation), in which an attorney gives his client a written opinion with the intention that it be transmitted to and relied upon by the plaintiff in dealing with the client.

*Id.* at 343 n. 4, 134 Cal.Rptr. 375, 556 P.2d 737.

Policy considerations articulated in *Goodman v. Kennedy* weighing against the imposition of a duty are relevant to the facts at hand.

> To make an attorney liable for negligent confidential advice not only to the client who enters into a transaction in reliance upon the advice but also to the other parties to the transaction with whom the client deals at arm's length would inject undesirable self-protective reservations into the attorney's counselling role. The attorney's preoccupation or concern with the possibility of claims based on mere negligence (as distinct from fraud or malice) by any with whom the client might deal "would prevent him from devoting his entire energies to his client's interests." [citations omitted].

*Id.* at 344, 134 Cal.Rptr. 375, 556 P.2d 737.

█ While plaintiffs have controverted Mr. Cheyne's showing that he did not assist the trust deed sales, they have not controverted his showing that his advice was never transmitted to the trust deed purchasers for their reliance. Accordingly, defendant Cheyne's motion for summary judgment on the Seventh and Tenth Causes of Action against the fractionalized trust deed investors appears well taken.

### III.

*Motion for Continuance of Trial and Reopening of Discovery*

As indicated at the outset, when these matters came on for hearing, this court vacated the January 22, 1985 trial date, resetting it for March 19, 1985 and reopening discovery for the primary and limited purpose of permitting Mr. Cheyne to refocus his interrogatories in view of the Fourth Amended Complaint's detailed allegations of securities fraud. It was further indicated that this discovery would again be monitored by the Honorable Roger C. McKee. Except for this relief already granted, no additional relief appears justified at this time.

Contrary to defendant Cheyne's argument, the court finds that the Third

Amended Complaint largely informed defendant of the facts underlying the securities claims now particularly pleaded in conformity with Fed.R.Civ.P. 9(b) by the Fourth Amended Complaint.

Mr. Cheyne's purported unpreparedness to go to trial on the misrepresentations underlying the multiple theories of securities fraud lacks persuasive support. His position in this regard is inconsistent. First, the facts supporting the securities fraud claims are largely the same as those underlying the negligence claim. The negligence claim has been pending against him from the initiation of this action, and his counsel acknowledged at the hearing that he was prepared to go to trial on this theory. Second, Mr. Cheyne's counsel also indicated at the hearing that he was prepared to go to trial on the Fourth Amended Complaint's Rule 10b–5 claim, but not the section 12(2) or section 17(a) claims. The factual allegations underlying these claims, however, are identical, as are the elements of aider and abettor liability where available. Moreover, participant liability under section 12(2) requires a showing substantively similar to that required for aider and abettor liability under Rule 10b–5 and section 17(a).

The court is informed that defendant has deposed each of the representative plaintiffs, as well as a significant number of similarly situated class members. At this juncture it would appear that any additional information necessary to defend against the Fourth Amended pleading could be adduced by interrogatory rather than deposition. Accordingly, despite the complaint's recent amendment, substantial additional discovery does not appear justified.[11] The trial date of March 19, 1985 stands confirmed.

## CONCLUSION

Upon due consideration of the parties' memoranda and exhibits, the arguments advanced at the hearing, and for the reasons set forth herein, the court grants defendant Cheyne's motion to dismiss as time barred the section 12(1) claims of investors' purchasing interests prior to August 25, 1981. Similarly, the California Corporations Code section 25507 claims of plaintiffs investing prior to August 25, 1980 are time barred and dismissed. In all other aspects, defendant Cheyne's motions to dismiss or for summary judgment as to the First, Second, Third, and Fourth Causes of Action of the Fourth Amended Complaint are denied. Defendant Cheyne's motion for summary judgment for lack of federal jurisdiction is also denied.

Additionally, the court grants defendant Cheyne's motion for summary judgment on the Seventh and Tenth Causes of Action as to the claims of the fractionalized trust deed investors.

Excepting the relief granted at the hearing, the motion for a six month continuance of the date for trial is denied. The March 19, 1985 trial date shall stand, and discovery may reopen for the limited purpose discussed above.

---

11. The decision to the permissible scope of additional discovery in each particular instance remains, of course, with the monitoring magistrate, the Honorable Curtis McKee. This would include additional depositions.