**SENIORS CIVIL LIBERTIES ASSOCIATION, INC.,**
Plaintiff–Appellant,

Stanley J. Motyl, Emilie Motyl, Helen Priel, Plaintiffs,

Mary Riedel, Paul Riedel, Plaintiffs–Appellants,

Margaret Shipley, Plaintiff,

v.

Jack KEMP, in his official Capacity as Secretary of the United States Department of HOUSING AND URBAN DEVELOPMENT, Defendant–Appellee.

No. 91–3525.

United States Court of Appeals, Eleventh Circuit.

July 13, 1992.

**1032**

Mark B. Schorr, Fort Lauderdale, Fla., for plaintiff-appellant.

Patricia Sharin Flagg, U.S. Dept. of Housing and Urban Development, Linda F. Thome, U.S. Dept. of Justice, Appellate Section Civ. Rights Div., Washington, D.C., for defendant-appellee.

Before EDMONDSON and COX, Circuit Judges, and MERHIGE *, Senior District Judge.

PER CURIAM:

Plaintiffs Seniors Civil Liberties Association, Incorporated (SCLA), Mary Riedel and Paul Riedel appeal the district court's grant of summary judgment in favor of United States Secretary of Housing and Urban Development Jack Kemp (who will, for convenience's sake, be referred to as HUD) on plaintiffs' constitutional challenge to the 1988 familial status antidiscrimination amendments to the Fair Housing Act. *See* 42 U.S.C. §§ 3601–3619. We affirm.

## BACKGROUND

Mary and Paul Riedel are octogenarians living in the Clearwater Point Condominium complex (Clearwater Point) in Florida. Clearwater Point's Declaration of Condominium and Restated By-laws prohibit children under the age of sixteen from living with the Riedels or other Clearwater Point condominium owners.

SCLA is a not-for-profit corporation organized to promote and to protect the civil rights of its elderly members, particularly elders' rights to peaceful occupancy of their residences. The Riedels and the other original, individual plaintiffs, *see infra* note 2, are members of SCLA.

The Riedels and SCLA challenge recent changes to the Fair Housing Act. The 1988 amendments to the Fair Housing Act prohibit discrimination against families with children. 42 U.S.C. § 3604(a) ("[I]t shall be unlawful [t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of ... familial status....").[1] But the amendments exempt "housing for older persons" from the familial status antidiscrimination provisions if that housing meets criteria defined by statute and by regulations. *See, e.g., id.* § 3607(b)(2) & (3). HUD administers and enforces the Fair Housing Act, *id.* §§ 3608, 3610, 3612, but parties discriminated against may also enforce the Act's provisions. *Id.* §§ 3610, 3613.

SCLA, the Riedels and other plaintiffs[2] brought an action against HUD for a de-

---

* Honorable Robert R. Merhige, Jr., Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation.

1. Under 42 U.S.C. § 3602(k), "Familial status" means one or more individuals (who have not attained the age of 18 years) being domiciled with
    (1) a parent or another person having legal custody of such individual or individuals; or
    (2) the designee of such parent or other person having such custody, with the written permission of such parent or person.

The protections afforded against discrimination on the basis of familial status shall apply to any person who is pregnant or is in the process of securing legal custody of any individual who has not attained the age of 18 years.

2. SCLA and the Riedels are the only plaintiffs appealing the district court's summary judgment. Plaintiffs Stanley and Emily Motyl (homeowners), Helen Priel (mobile-home owner) and Margaret Shipley (condominium owner) sought no appeal. For a more complete description of plaintiffs, see *Seniors Civil Liberties*

claratory judgment under 28 U.S.C. § 2201[3] and for injunctive relief under 28 U.S.C. § 2202[4]. Plaintiffs, claiming that congressional amendments made in 1988 to the Fair Housing Act violated their constitutional rights, brought a declaratory judgment action; HUD had neither taken nor expressly stated that it planned to take enforcement action against plaintiffs.

Plaintiffs charged that the Fair Housing Act familial status antidiscrimination provisions violated the First Amendment by denying them freedom of association; violated the Fifth Amendment by depriving them of liberty and property interests; violated their constitutional right to privacy; violated the Tenth Amendment by encroaching on Florida's sovereignty; and violated their due process rights by being unconstitutionally vague.

On stipulated facts, plaintiffs and HUD filed motions for summary judgment. The district court first rejected HUD's arguments that plaintiffs lacked standing; in doing so, the court concluded that the individual plaintiffs were threatened with real and immediate injury, *Seniors Civil Liberties Ass'n, Inc. v. Kemp,* 761 F.Supp. 1528, 1540 (M.D.Fla.1991), and that a real and substantial dispute existed. *Id.* at 1538. The district court then rejected plaintiffs' constitutional challenge to the Act's 1988 amendments and granted summary judgment in favor of HUD. This appeal followed.

### DISCUSSION

■ "[A]s a matter of the case-or-controversy requirement associated with [Article III of the Constitution]," *Juidice v. Vail,* 430 U.S. 327, 331, 97 S.Ct. 1211, 1215, 51 L.Ed.2d 376 (1977), and because of the "ac-

tual controversy" requirement of the Declaratory Judgment Act, 28 U.S.C. § 2201, we questioned the standing of the Riedels and SCLA to prosecute this federal question. After studying the record and the parties' supplemental briefs, we conclude that plaintiffs have standing.

The Riedels' condominium complex currently violates the Fair Housing Act's prohibition against familial status discrimination. More important, the complex fails to meet the statutory exemption for "housing for older persons" because the complex has failed to publish and adhere to "policies and procedures which demonstrate an intent by the owner or manager to provide housing for persons 55 years of age or older." 42 U.S.C. § 3607(b)(2)(C)(iii). Under these circumstances, the Riedels have standing because there exists "a realistic danger of sustaining a direct injury as a result of the [Act's] operation or enforcement." *Babbitt v. United Farm Workers' Nat'l Union,* 442 U.S. 289, 297, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979).

■ SCLA also has standing because, "in the absence of injury to itself, an association may have standing as the representative of its members." *Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975). By acting as the representative of the Riedels and other similarly situated older persons who are or might be injured, SCLA has standing.[5] *See id.* at 511–13, 95 S.Ct. at 2211–13. We now address plaintiffs' arguments on appeal.

*Tenth Amendment Claim*

■ SCLA and the Riedels argue that the familial status provisions of the Fair Housing Act regulate "lifestyles" and real property which have nothing to do with

---

*Ass'n, Inc. v. Kemp,* 761 F.Supp. 1528, 1533–35 (M.D.Fla.1991).

**3.** "In a case of actual controversy within its jurisdiction, ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration...." 28 U.S.C. § 2201(a).

**4.** "Further necessary or proper relief based on a declaratory judgment or decree may be granted ... against any adverse party whose rights have

been determined by such judgment." 28 U.S.C. § 2202.

**5.** Contrary to the district court's conclusion, SCLA is in this case representing the individual plaintiffs and those similarly situated. *See* Complaint for Plaintiffs ¶¶ 5, 10. Because we conclude that SCLA has standing in its representative capacity, we express no opinion on whether SCLA has standing in its own right to seek relief.

interstate commerce. They conclude that, because no interstate commerce is involved, Congress has no justification to interfere with the state's control over state citizens' real-estate and contracting activities, and therefore the provisions violate the Tenth Amendment. We disagree.[6]

Plaintiffs' claim fails, first, because nothing in the Fair Housing Act regulates the states as states. *See Garcia v. San Antonio Metropolitan Transit Auth.,* 469 U.S. 528, 537, 105 S.Ct. 1005, 1010, 83 L.Ed.2d 1016 (1985). But even if the states were regulated as states, the Commerce Clause, U.S. Const. art. I, § 8, cl. 3, supports Congress' exercise of power.

We find no merit in plaintiffs' argument that, because the real estate market involves private intrastate transactions, no interstate commerce is involved in residential sales and rentals. The Supreme Court has rejected the argument that "the Tenth Amendment shields the States from pre-emptive federal regulation of *private* activities affecting interstate commerce." *Hodel v. Virginia Surface Mining and Reclamation Ass'n,* 452 U.S. 264, 292, 101 S.Ct. 2352, 2368, 69 L.Ed.2d 1 (1981). "Congress' authority under the Commerce Clause extends to intrastate economic activities that affect interstate commerce." *Garcia,* 469 U.S. at 537, 105 S.Ct. at 1010.

■ If a rational basis exists for Congress' finding that an activity affects interstate commerce, we must defer to that finding and determine only whether the means selected by Congress to enforce the law are reasonably adapted to the end permitted by the Constitution. *Preseault v. ICC,* 494 U.S. 1, 18, 110 S.Ct. 914, 925, 108 L.Ed.2d 1 (1990). SCLA and the Riedels argue that there was no finding that interstate commerce was affected by discrimination against families with children through rental and, especially, sales of homes. We disagree.

■ First, Congress need make no express or formal finding that regulated ac-

tivities regulate interstate commerce. *Katzenbach v. McClung,* 379 U.S. 294, 298, 85 S.Ct. 377, 381, 13 L.Ed.2d 290 (1964). Congress had ample evidence before it, and was adequately aware, that its exercise of power under the Fair Housing Act was supported by the Commerce Clause. *See, e.g., Fair Housing Act of 1967: Hearings on S. 1358, S. 2114, and S. 2280 Before the Subcomm. on Housing and Urban Affairs of the Senate Comm. on Banking and Currency,* 90th Cong., 1st Sess. 13–14, 23–24 (1967); 114 Cong.Rec. 2536–37 (1967) (including Attorney General's memorandum that Fair Housing Act was supported by Commerce Clause because of broad interstate effect of housing market).

Second, to the extent plaintiffs argue that Congress attempted only to regulate the rental housing market, they are wrong because the legislative history of the Act and the amendments to the Act show that Congress sought to ban discrimination in all housing transactions, including sales to families with children. *See, e.g.,* H.Rep. No. 711, 100th Cong., 2d Sess. 19 (1988), U.S.Code Cong. & Admin.News 1988, p. 2175, 2180. (describing national familial status discrimination and noting that one reason for passing 1988 amendments was because only sixteen states had law prohibiting familial status discrimination, and of these sixteen, nine states did not cover sales of housing). Also, and more important, plaintiffs' argument that Congress had no intent to regulate the sales market is undermined by the plain language of the statute that regulates both rentals and sales. *See* 42 U.S.C. § 3604 ("to refuse to sell or rent").

Because Congress had a rational basis for amending the Fair Housing Act—namely, the nationwide problem caused by familial status discrimination in the housing market—and because the housing market affects interstate commerce, plaintiffs' Tenth Amendment claim fails.

---

**6.** Because this court has said before that, if injury or threatened injury exists, private parties have standing to assert Tenth Amendment challenges, *Atlanta Gas Light Co. v. United States*

*Dep't of Energy,* 666 F.2d 1359, 1368 n. 16 (11th Cir.1982), we conclude, with admitted doubts, that the Riedels and SCLA have standing to advance this Tenth Amendment claim.

*Fifth Amendment Claim—Deprivation of Contractual and Property Rights*

■ SCLA and the Riedels next argue that, because the familial status provisions removed plaintiffs' right to be free from children in their condominium complex, the provisions violated the Fifth Amendment by depriving them without due process of their contractual and property rights.

■ "It is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976), *cited in Seniors Civil Liberties Ass'n*, 761 F.Supp. at 1556.[7] Plaintiffs have failed to carry this burden because they have shown no arbitrary or irrational congressional action.

■ After conducting extensive studies and hearings, Congress determined that families with children were being discriminated against in the housing market. Con-

gress then enacted legislation to cure this perceived discrimination. If Congress had not also acted to protect the rights of persons situated similarly to the Riedels—that is, older, potentially more vulnerable home owners and renters—perhaps plaintiffs' argument that the 1988 amendments were arbitrary and irrational might have some strength. Congress, however, expressly exempted *qualified* housing for older persons from the reach of the familial status amendments. Because of the strong deference accorded legislation in the field of national economic policy[8] and because Congress seems to have acted rationally by protecting persons similarly situated to plaintiffs, the Fifth Amendment due process claim fails.

*Fifth Amendment Claim—Discrimination*

■ SCLA and the Riedels argue that the family status amendment "discriminates" against elderly people who have chosen to live away from children.[9] That Congress expressly exempted the housing of older persons from the reach of the familial status amendment blunts this ar-

---

7. Plaintiffs also challenge the district court's conclusion that the 1988 amendments have no retrospective effect. Although we agree with the district court, even if the Act has retrospective effect, we would examine the amendments under the same arbitrary and irrational standard. *See Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 733, 104 S.Ct. 2709, 2720, 81 L.Ed.2d 601 (1984) (harsh-and-oppressive standard applied to retrospective legislation does not differ from arbitrary-and-irrational standard). And assuming the Act has retrospective effect, we would find no constitutional flaw under this standard.

8. Presumably to overcome this deference, plaintiffs argue that Congress made no findings on the housing market *in Florida*. Neither the Constitution nor the Supreme Court requires Congress to make state-by-state findings when it acts; in fact, members of the Supreme Court have recognized in other disputes that, when Congress acts, it is not "required to make state-by-state findings ... [and may] paint with a ... broad[ ] brush." *See, e.g., Fullilove v. Klutznick*, 448 U.S. 448, 501 n. 3, 100 S.Ct. 2758, 2786–87 n. 3, 65 L.Ed.2d 902 (1980) (Powell, J., concurring) (concurring in Court's decision to uphold minority business enterprise provision of Public Works Employment Act).

9. To the extent the Riedels argue that they alone are discriminated against, their argument must fail. As HUD points out, condominium owners like the Riedels are exempted by HUD, although not expressly exempted in the statute, from the reach of the antidiscrimination statute. *See* 24 C.F.R. Ch. 1, Subch. A, App. I at 693. If the Riedels wanted to exclude families with children from purchasing *their* condominium, HUD would allow them to do so as owners of *a* condominium. But HUD or a private litigant could force the condominium association to abandon its prohibition against sales to families with children and force the association to pay actual damages, punitive damages, a civil penalty, or all three. *See* 42 U.S.C. §§ 3613(c) (relief granted private persons), 3614(d) (relief granted HUD). The condominium association would then seem to be able to assess a share of the civil damages against the Riedels as unit owners. *See, e.g.,* Fla.Stat. §§ 718.115(2) ("payment of common expenses shall be collected by assessments against unit owners"), 718.119 ("owner of unit may be personally liable for acts or omissions of [condominium] association in relation to the use of common elements").

gument. Because a review of the statutory exemption, 42 U.S.C. § 3607(b)(2), and the related regulatory framework, 24 C.F.R. § 100.304, shows that the exemptions are reasonable and rational in the light of a legitimate governmental purpose—curing familial status discrimination—the Act violates no due process rights of the Riedels.

### Right to Privacy and Freedom of Association

■ Of the five meritless arguments advanced by plaintiffs, their privacy and association argument is the most meritless. Plaintiffs argue: "If the right of ... privacy protects the decisions concerning the begetting and rearing of children, then the decision not to have children around must be afforded the same protection." Brief for Appellants at 38. If the Act were trying to force plaintiffs to take children into their home, this argument might have some merit. But the Act violates no privacy rights because it stops at the Riedels' front door. Whatever the penumbral right to privacy found in the Constitution might include, it excludes without question the right to dictate or to challenge whether families with children may move in next door to you.

■ Plaintiffs' association argument fails because plaintiffs have alleged no set of facts that would extend constitutional association protection to the condominium, as it now exists. *See Roberts v. United States Jaycees*, 468 U.S. 609, 620, 104 S.Ct. 3244, 3251, 82 L.Ed.2d 462 (1984) ("[F]actors that may be relevant include size, purpose, policies, selectivity, congeniality, and other characteristics that in a particular case may be relevant."). Plaintiffs allege only loosely defined association by age, which may be one relevant factor but which fails to tip the scale in favor of constitutional protection, especially because *anybody* over sixteen, with no other restriction, is free to live in the Riedels' complex. We also note with approval the district court's conclusion that, if plaintiffs followed the exemption guidelines, they would lawfully be able to restrict occupancy based on age to an even greater degree than is the case in the condominium complex now. *See Seniors Civil Liberties Ass'n*, 761 F.Supp. at 1550.

### Vagueness

■ Although plaintiffs couch this issue in terms of whether the district court applied the proper standard of scrutiny, they argue chiefly that the statute and regulations are unconstitutionally vague. This argument has no merit. Even if the most stringent scrutiny is applied, the statute has the constitutionally required degree of specificity.

■ To find a civil statute void for vagueness, the statute must be "so vague and indefinite as really to be no rule or standard at all." *Boutilier v. INS*, 387 U.S. 118, 123, 87 S.Ct. 1563, 1566, 18 L.Ed.2d 661 (1967). Plaintiffs try to overcome this civil-statute standard by arguing that the Act imposes quasi-criminal penalties. But "even if construed as a penal statute, a non-criminal statute is not unconstitutionally vague 'if persons of reasonable intelligence can derive a core meaning from the statute.'" *Cotton States Mutual Ins. Co. v. Anderson*, 749 F.2d 663, 669 n. 9 (11th Cir.1984). Given the guidance provided by the statute, 42 U.S.C. § 3607, and HUD regulations, 24 C.F.R. § 100.304, a person of reasonable intelligence could easily derive the Act's core meaning and glean sufficient information to allow that reasonably intelligent person to conform to the statutory requirements.

### CONCLUSION

Because plaintiffs' constitutional arguments have no merit, the decision of the district court is AFFIRMED.