**UNITED STATES of America, Plaintiff,**

v.

**Robert C. WEISS; Gynneth Weiss, dba Grand Plaza Apartments; Sunny Shimberg, Defendants.**

No. CV–S–92–831–PMP (RJJ).

United States District Court,
D. Nevada.

March 15, 1994.

S.E. Pietrafesa, John R. Dunne, Paul F. Hancock, Brian F. Heffernan, Diane Houk, Housing/Civil Enforcement Section, Civ. Rights Div. U.S. Dept. of Justice, Washington, DC, for plaintiff.

Samuel A. Abady, Kurzman, Karelsen & Frank, New York City, for defendants.

## ORDER

LOWE, Senior District Judge.

Plaintiff, United States of America, brought this Title VIII (Fair Housing Act) [1] action on behalf of itself and two private persons alleging in (Count 1), intentional discrimination against the named plaintiffs in and (Count II), a pattern and practice violation of the Act based on the claims of the named plaintiffs.

Depositions were taken of the named plaintiffs which disclosed their unsuitability both as tenants and as plaintiffs. Counsel for plaintiffs then moved for and was granted leave to file a First Amended Complaint.

1. 42 U.S.C. § 3601 *et seq.* as amended in 1988, effective March 12, 1989, hereinafter "FHAA".

This First Amended Complaint alleges that jurisdiction lies under 28 U.S.C. § 1345 and 42 U.S.C. § 3614(a).[2] The specific sections of the Act alleged to have been violated are § 3604(a) and § 3604(b).[3]

Plaintiff seeks injunctive relief, compensatory and punitive damages as will fully compensate each victim of defendants' denial of equal housing opportunity.[4]

The complaint alleges pattern and practice discrimination in that defendants:

... maintained a policy of limiting occupancy of rental units to no more than three (3) persons in a two (2) bedroom, one (1) bath unit; and no more than four (4) persons in a three (3) bedroom, two (2) bath unit.

Plaintiff, alleges defendant's policy totally excludes traditional families with children from the two (2) bedroom, one (1) bath units and severely limits housing opportunities for families with more than one child.

The theory of the Government apparently is that the restrictive housing policy of defendants is, in and of itself, a violation of 42 U.S.C. § 3604(a) and (b) which prohibits denial of dwellings, services and facilities to persons because of familial status.[5]

Defendants respond that they have established a neutral policy of housing occupancy based upon business necessity. The physical layout of the defendant's premises is essential to an understanding of the controversy. The defendants are co-owners of Grand Plaza Apartments ("Grand Plaza") along with the Weiss charitable trust. They have owned the complex since 1966.

Grand Plaza is a 652 unit apartment complex located on Koval Lane in Las Vegas, Nevada. The apartments are located in one hundred twenty eight buildings; ninety-three of the buildings contain four apartments and are referred to as four-plexes; thirty-five of the buildings are eight-plexes which are two co-joined four-plexes. Each four-plex (including each of the two co-joined units in the eight-plexes) is heated by one hot water heater.

■ Harvey H. Irby, P.E., a Registered Professional Engineer licensed in Nevada, California, Mississippi and Arizona examined the hot water supply systems at Grand Plaza and submitted *a declaration*[6] *setting forth his professional opinion:*

.... the maximum number of persons each hot water system in each four-plex can serve is as follows: (i) the gas-fired hot water heaters—which serve most of the

2. U.S.C. § 3614(a) states in pertinent part the Attorney General may commence a civil action: Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any rights granted [by the act] ... or any group of persons has been denied any of the rights granted by [the act] ... and such denial raises an issue of general public importance. The attorney General may commence civil action in any appropriate United States district court.

3. The occupancy policy of defendants, the complaint alleges, operates unreasonably to exclude families with children; in implementing this policy defendants have:
 a. Made unavailable or denied dwellings to persons because of familial status, in violation of 42 U.S.C. § 3604(a);
 b. Discriminated against persons in the terms, conditions or privileges of the rental of a dwelling, and in the provision of services or facilities in connection therewith in violation of 42 U.S.C. § 3604(b).

4. No victims of the alleged discrimination are named in the complaint and in response to dis-

covery requests seeking the identity of alleged victims the government claimed such information is irrelevant.

5. "Familial status" is defined in 42 U.S.C. § 3602(k) to include an individual under 18 who is domiciled with his or her parents.

6. Counsel for plaintiff attempts to discredit his declaration by stating that it is *post factum* and since it was prepared for this litigation this Court should disregard it as an after thought to justify defendant's occupancy policy. The simple answer is if the report sets forth accurately the heating capacity for hot water delivery at the complex, and represents the former and present condition of the complex, it is highly relevant as to the on site condition of the premises. If plaintiff takes issue with the opinion of defendant's expert the appropriate procedure was for plaintiff to retain its own expert to examine the premises and render its own expert's report. The lay opinion of plaintiff's counsel is of no value to this Court on a matter requiring technical expertise.

four-plexes—can serve eleven people; and (ii) the electric hot water heaters can serve six people.

.... the only way the hot water systems reasonably could serve more residents in each four-plex building is for Grand Plaza to purchase and install entirely new, larger hot water heaters and retrofit the entire hot water piping system.

Specifically, I am advised that the Government's position is that Grand Plaza should permit eighteen occupants in each four-plex. In other words, the Government asserts that eighteen occupants, plus their guests, should be making demand on each hot water system.... `

In my professional opinion, in order to serve eighteen occupants—without accounting for guests—Grand Plaza would have to install in each four-plex an 89 gallon, 154,000 BTU/hr gas-fired hot water heater. Each new 89 gallon heater cost approximately $3,600.... The total cost of upgrading the present system would be $1.63 million dollars.

## A.

### PLAINTIFF'S CONTENTION

Although there are very few facts in dispute, the parties have a serious disagreement as to the applicable law. Plaintiff opines that in cases where a discriminatory policy is openly declared, "direct proof of such a policy alone is sufficient to meet the pattern or practice requirement, and it is unnecessary for the United States to prove numerous specific occasions on which the discriminatory policy was carried out".[7]

Plaintiff argues that this Court must use burdens enunciated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)[8] to judge the legality of the announced policy.

■ Under the *McDonnell Douglas* test, once the plaintiff establishes a *prima facie* case of discrimination, a presumption of illegality is created which requires a defendant to articulate a legitimate, non-discriminatory justification for the challenged policy. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. If a defendant is able to state a justification for his or her policy, the plaintiff must bear the burden of proof on the entire case by proving the asserted reasons are merely pretext. *Id.* Plaintiff cites in support of its position: *United States v. Badgett,* 976 F.2d 1176 (8th Cir.1992); *See also HUD v. Blackwell,* 908 F.2d 864 (11th Cir.1990); *Pinchback v. Armistead Homes Corp.,* 689 F.Supp. 541 (D.Md.1988), *aff'd in part, vacated in part,* 907 F.2d 1447 (4th Cir.1990), *cert. denied,* 498 U.S. 983, 111 S.Ct. 515, 112 L.Ed.2d 527 (1990).

Once the policy has been found to be discriminatory under *McDonnell Douglas,* plaintiff appears to argue,[9] this finding would establish a *prima facie* violation of the Housing Act[10] without any necessity for proof of specific instances of discrimination. Plaintiff cites in support of its position: *United States v. City of Parma,* 494 F.Supp. 1049, 1095 (N.D.Ohio 1980), *aff'd,* 661 F.2d 562 (6th Cir.1981), *cert. denied,* 456 U.S. 926, 102 S.Ct. 1972, 72 L.Ed.2d 441 (1982); *United States v. L & H Hand Corp.,* 407 F.Supp. 576, 580 (S.D.Fla.1976); *United States v. Real Estates Development Corp.,* 347 F.Supp. 776, 783 (N.D.Miss.1972); *United States v. Yonkers Board of Educ.,* 624 F.Supp. 1276 (S.D.N.Y.1985), *aff'd,* 837 F.2d. 1181 (2d. Cir.1987), *cert. denied,* 486 U.S. 1055, 108 S.Ct. 2821, 100 L.Ed.2d 922 (1988).

## B.

### DEFENDANT'S CONTENTION

Defendant's contention[11] is that the Government cannot bear its burden of proof in this case because it cannot demonstrate that

---

7. Plaintiff's Memorandum in support of Summary Judgment (Docket # 66) at pp 10–11.

8. *McDonnell Douglas* was a Title VII case.

9. United States' Motion for Summary Judgment (Docket # 66) at pp. 10–11.

10. Ibid.

11. See discussion of constitutional claims infra at pp. 18–22.

a specific application of defendant's occupancy policy has had any measurable public impact which, defendants argue, is an essential factor in a pattern and practice claim. *United States v. Belistrieri,* 981 F.2d 916, 929 (7th Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 58, 126 L.Ed.2d 28 (1993); *United States v. Hunter* 459 F.2d. 205, 217 (4th Cir.1972), *cert. denied,* 409 U.S. 934, 93 S.Ct. 235, 34 L.Ed.2d 189 (1972); Schwemm, *Housing Discrimination Law and Litigation,* § 26.2(1). Defendants contend that the Government cannot identify even one instance where defendants have, in fact applied its policy of restricted housing occupancy to deny housing to a person or family with a minor child nor can plaintiffs rely on demographic statistics to breach the gap;[12] this is because, defendants claim, the Supreme Court has made clear, *Watson v. Fort Worth Bank and Trust,* (a Title II case) 487 U.S. 977, 987, 108 S.Ct. 2777, 2785, 101 L.Ed.2d 827 (1988) that not every practice that results in a disparate impact on a protected class violates an anti-discrimination Act. That Court reasoned that the practice must be functionally equivalent to an intentional violation of the Act. Defendants cite *Metropolitan Housing Development Corp. v. Village of Arlington Heights,* 558 F.2d. 1283, 1290 (7th Cir.1977) for the fact that federal courts condemn the adoption of a *per se* rule which "would go beyond the intent of Congress and would lead to untenable results in specific cases." id. at 1290.

Defendants further argue that even if this Court were to find a pattern or practice of discrimination based upon defendant's restrictive occupancy policy and plaintiff's statistical analysis, defendants' justification for its policy would entitle them in any event to an order granting Summary Judgment.

The Supreme Court has not addressed the issue of what test to apply in disparate impact cases under Title VIII,[13] nor has the Ninth Circuit determined the standard.[14] Defendants contend that this Court should adopt the multi-factor test adopted in the Sixth and Seventh[15] Circuits and reject the shifting burden of persuasion analysis sanctioned by the Supreme Court in *McDonnell Douglas* for Title VII disparate treatment cases.

## I.

### CASE PRESENTED IN THIS LITIGATION

The parties have engaged in extensive controversy concerning the legal basis or legal theory of this litigation. As noted earlier the complaint in this case alleged in Count I intentional discrimination on the basis of familial status[16] against two private persons. The complaint further alleged that the Secretary of HUD authorized the action on behalf of the named private persons.[17]

When the defendant's deposed the named plaintiff, Ralph Fresh, he admitted that the complaint he filed with HUD, alleging familial discrimination was false in its particulars, that he had committed perjury, prior substance abuse and had prior criminal convictions against himself and his live-in girl friend, McCutcheon.[18]

After the depositions, the government moved for and was granted permission to file a First Amended Complaint. The First Amended Complaint in paragraph 8(a) alleged a pattern and practice of resistance and paragraph 8(b) denial to a group of

---

12. *Phillips v. Hunter Trails Community Association,* 685 F.2d 184, 189 (7th Cir.1982); *Edwards v. Johnston County Health Department,* 885 F.2d 1215, 1223 (4th Cir.1989).

13. In *Town of Huntington N.Y. v. Huntington NAACP Branch,* 488 U.S. 15, 18, 109 S.Ct. 276, 277, 102 L.Ed.2d 180 (1988) the Court stated it would not reach the issue of the appropriate test since it was not raised.

14. *Halet v. Wend Investment Co.,* 672 F.2d 1305, 1311 (9th Circuit 1982); *Keith v. Volpe,* 858 F.2d

467 (9th Cir.1988). *cert. denied,* 493 U.S. 813, 110 S.Ct. 61, 107 L.Ed.2d 28 (1989)

15. *Village of Arlington Heights,* 558 F.2d at pp. 1288–1290; *Authur v. City of Toledo,* 782 F.2d 565, 575 (6th Cir.1986).

16. Violation of 42 U.S.C. 3604(a) alleged.

17. 42 U.S.C. § 3612(*l*).

18. Depositions attached as Exhibits B, C, D, and F to defendant's Motion to Compel (Docket # 46).

persons rights granted by Title VIII—which raises an issue of general public importance.

A great deal of confusion displayed in the Summary Judgment arguments in this case has been caused by plaintiff's Summary Judgment motion in which plaintiff states at p. 11:

> In determining whether a facially familial status in violation of neutral occupancy policy discriminates on the basis of the Fair Housing Act, *courts must apply the three part test set forth in McDonnell Douglas Corp. v. Green,* 411 U.S. 792 [93 S.Ct. 1817, 36 L.Ed.2d 668] (1973) *United States v. Badgett,* 796 [976] F.2d 1176 (9th [8th] Cir.1992) Emphasis mine.

■ The plaintiff contends that where a facially neutral policy[19] is directed against a protected class generally and has a discriminatory effect, the absence of individual complaints is irrelevant, citing *United States v. Hunter,* 459 F.2d 205, 217 (4th Cir.), *cert. denied,* 409 U.S. 934, 93 S.Ct. 235, 34 L.Ed.2d 189 (1972).

Defendants memorandum in opposition to the Government's Summary Judgment motion points out, quite correctly, that *McDonnell Douglas,* and *Badgett* were cases involving intentional discrimination or disparate treatment.

In treating Title VIII cases as analogues of Title VII claims, defendants again correctly point out that the Supreme Court has established a different analytical framework for Title VII cases involving disparate impact citing *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971) and if consistency is a virtue, Courts should, in the absence of Supreme Court precedent, apply the same analysis to Title VIII cases.

■ It is noted that an allegation of pattern and practice of resistance more nearly resembles disparate impact than it does dis-

parate treatment theory. A disparate impact claim analyzes a facially neutral policy for its differential impact or effect on a protected group whereas disparate treatment claims focus upon differential treatment of similarly situated persons or groups. *Sobel v. Yeshiva Univ.,* 839 F.2d 18, 28 (2d Cir.1988). It is also to be noted that Federal Courts of Appeal and District Courts follow the notion that the *McDonnell Douglas* test, is an intent based standard for disparate treatment cases. This Court was cited to and could find no case that required plaintiff to prove in a disparate impact case the *McDonnell Douglas* requirement that defendant's justification was pretextual. *Huntington Branch, NAACP v. Town of Huntington,* 844 F.2d 926, 939 (2d Cir.1988); *United States v. City of Black Jack Missouri,* 508 F.2d 1179, 1185 (8th Cir.1974), *cert. denied,* 422 U.S. 1042, 95 S.Ct. 2656, 45 L.Ed.2d 694 (1975).

■ In plaintiff's opposition to defendants Summary Judgement motion. (I note that each of these motions and opposition thereto were filed separately because of size) plaintiff, rather than admit the inapplicability of the *McDonnell Douglas* analysis to the instant case, compounded the confusion by stating: "We incorporate those arguments in this response, and direct the Court's attention to the arguments therein"[20] alleging "this approach demonstrates illegal disparate treatment and a violation of the Fair Housing Act in this case."[21] Plaintiff complains that defendants do not even address this argument. The short answer this Court gives plaintiff is, that a defendant is not required to address an argument based on a claim that was never pled. This court reiterates that the First Amended Complaint only pleads two causes of action, both based on the theory of disparate impact.

■ The distinction is important because it not only applies to the burden of proof[22] but to a further distinction that must be

---

19. Plaintiff admits that there is no evidence of intentional discrimination in the policy complained of.

20. United States memorandum opposition p. 19.

21. Ibid at p. 20.

22. Under the *McDonnell Douglas'* shifting burdens scheme once plaintiff makes out a *prima facie* case, defendant need only assert the justification for his policy, the burden of proof then shifts to plaintiff. In disparate impact cases under Title VII the defendant bears the burden of proving his asserted justification was a compelling business necessity.

made—whether the defendant in a disparate impact case is a governmental entity or a private person.

Judge Harold H. Greene, writing in *Brown v. Artery Organization*, 654 F.Supp. 1106 (D.C.Dist.Col.1987) 100 A.L.R.Fed. 71 pointed out the necessity for Courts to make the above distinction and the confusion that results from a failure to do so. Judge Greene States:

> A central issue here, . . . is whether the Act requires proof of the landlord's intentional discrimination or whether the statute is violated also where no such intention is established but where the conduct can be shown to have a discriminatory effect.

> The answer to that question is unfortunately not entirely clear from a reading of the decided cases. Several decisions are inconsistent with each other; others are incomplete in significant respects; and still others do not distinguish between the relevant concepts. While, to be sure, proof of discriminatory intent by the landlord seems everywhere to be regarded as establishing a violation of the statute, see *Betsey v. Turtle Creek Associates*, 736 F.2d 983, 986 (4th Cir.1984), there is a variety of opinion, usually not reconciled in any systemic fashion, whether a violation may also be predicated solely on proof that the landlords actions had a discriminatory effect. . . .[23]

Judge Green then explains:

> If a defendant is a governmental body, proof of discriminatory impact of its actions on the community for which it serves suffices to establish a *prima facie* case of violation of the Fair Housing Act. . . .

> If the defendant is not a governmental body the plaintiff tenants will not be deemed to have proved a violation of the Fair Housing Act if they demonstrate no more than that the defendant's actions have had or will have a discriminatory effect or impact. . . .

> While it makes perfect sense to charge a governmental entity with violations of the statute if its actions—by way of regula-

tions, ordinances, zoning decisions, or the like—have the effect of fostering or perpetuating racial segregation, there is no indication that Congress had in mind the far reaching consequences of the application of such a rule on private landlords or developers. A rule which imposed the burden of responsibility on such individuals or entities for the racial effects of their housing conversions *irrespective of their purpose or intent* would not only render them responsible for consequences over which they have no control (e.g., the racial mix in the community as a whole), but. . . . would he likely to halt in their tracks most, if not all, private efforts to upgrade deteriorated housing. . . .[24]

Since this Court finds that the instant case charges the disparate impact of defendant's housing policy having the ultimate effect, *Metropolitan Housing Corp. v. Village of Arlington Heights*, 558 F.2d at 1290–91, of discriminating against families with children with respect to housing accommodations in the City of Las Vegas, Nevada and the defendant is private person, this Court will conform its analysis of the applicable law to the above mentioned pertinent factors.

Both sides move for Summary Judgment.

## II.

### *SUMMARY JUDGMENT DISCUSSION.*

Pursuant to Federal Rule of Civil Procedure 56, Summary Judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

■ The party moving for Summary Judgment has the initial burden of showing the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir.1982). Once the movant's burden is met by presenting evidence which, if

---

**23.** *Brown v. Artery* 654 F.Supp. at p. 1114.

**24.** Ibid, 654 F.Supp. at p. 1115.

uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). If the factual context makes the respondent's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radion Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *California Arch. Bldg. Prod. v. Franciscan Ceramics,* 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988).

 If the party seeking Summary Judgment meets this burden, the Summary Judgment will be granted unless there is significant probative evidence tending to support the opponent's legal theory. *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968); *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270 (9th Cir.1979). Parties seeking to defeat Summary Judgment cannot stand on their pleadings once the movant has submitted affidavits or other similar materials. Affidavits that do not affirmatively demonstrate personal knowledge are insufficient. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Likewise, "legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid Motion for Summary Judgment." *Id.*

 A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *See Admiralty Fund v. Hugh Johnson & Co.,* 677 F.2d 1301, 1305–06 (9th Cir.1982); *Admiralty Fund v. Jones,* 677 F.2d 1289, 1293 (9th Cir.1982).

 All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for Summary Judgment purposes. *Poller v. CBS, Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). After drawing inferences favorable to the respondent, Summary Judgment will be granted only if all reasonable inferences defeat the respondent's claims. *Admiralty Fund v. Tabor,* 677 F.2d 1297, 1298 (9th Cir.1982).

The trilogy of Supreme Court cases cited above establishes that "[S]ummary Judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.,* 477 U.S. at 327, 106 S.Ct. at 2554–55 (quoting Fed.R.Civ.P. 1) *See also Avia Group Int'l, Inc. v. L.A. Gear Cal.,* 853 F.2d 1557, 1560 (Fed.Cir.1988).

This court will first consider plaintiff's Motion for Summary Judgment and then defendant's motion.

### III.

### *PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT*

 Based upon its statistical analysis which plaintiff alleges proves that defendant's occupancy policy had a greater impact on families with children than on all-adult households; and the fact that prior to the passage of the familial amendments to the Fair Housing Act in 1988 the defendants' apartment complex was an adult community; plaintiff claims that it has shown that defendants policy of limiting occupancy of its apartments to specified numbers of persons per apartment discriminate against families with children.[25]

Defendants vigorously dispute plaintiffs statistical showing in that it is based on a nation wide census rather that the area involved in this law suit; defendants also claim that there are many variables that account for the number of families with children re-

---

**25.** Plaintiff's Motion for Summary Judgment pp.　　15–18 (Docket # 66).

siding in the complex in that it is a commercial area with many casinos and places for adult entertainment with few amenities that would attract families with children.

Summary Judgment is an issue finding—not an issue deciding procedure. Plaintiff can only prevail on its motion if there is no controverted issue of material fact. The pages of argumentation in the memoranda of both parties concerning the statistical presentations and the inferences to be drawn therefrom are the type of disputes of material fact that prevent a grant of Summary Judgment to a party, such as this plaintiff, who relies on the statistical method to prove a central element of its case—the discriminatory effect of defendants' occupancy limitation on families with children. Plaintiffs Motion for Summary Judgment is denied.

### IV.

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendants' Motion for Summary Judgment would have the same result as plaintiff's motion for the same reasons if it were not for the manner in which defendants have framed their argument.

Defendants contend that even if this court assumes that plaintiffs statistics show a discriminatory effect on families with children, defendants would still be entitled to Summary Judgment for the following reasons:

1. The Congress had no constitutional authority to enact the familial Amendment.
2. The Amendment as applied to these defendants who are private persons is unconstitutional.
3. Since neither the Supreme Court or the Ninth Circuit court of Appeals has decided the issue of the proper standard to apply to pattern and practice claims under Title VIII, this Court must choose an appropriate standard. Defendant further notes that although there is a division among Circuit Courts as to the correct standard, all Circuits that have considered the issue are unanimous in holding that the *McDonnell Douglas* test is only applied to a claim of disparate treatment.

4. Regardless of the test chosen by this Court to be applied to the facts of this case, the uncontroverted evidence of the reasons for defendant's housing occupancy policy constitute a legal defense to plaintiff's claims.

The arguments of the parties submitted on the issue of constitutionality apparently raise two distinct issues. One is the constitutional authority of Congress to enact the familial amendments to the Fair Housing Law. The second, is the constitutionality of the Act as applied to the facts in the instant case. This Court finds it is necessary to decide the first issue, but because the case can be decided on grounds other than the constitutionality of the Act as applied, it need not reach that question.

### A

### CONGRESSIONAL AUTHORITY

The Fair Housing Act begins with the following declaration:

It is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States. 42 U.S.C. § 3601.

### (a)

### The Thirteenth Amendment

Shortly after passage of the Act, the Supreme Court in an action brought under 42 U.S.C. § 1982 held that Congress had authority to regulate racial discrimination in housing under the Thirteenth amendment. *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968). However, this Court has been cited to no case in which Courts have upheld the Familial Amendments to the Act on grounds of the Thirteenth Amendment.

### (b)

### The Fourteenth Amendment

The Fourteenth Amendment justification is equally inappropriate as a source of Congressional power to enact the Familial Amendments governing private parties. The defendants are private parties, not governmental entities. The Supreme Court has

held since the Amendment was enacted that the Fourteenth Amendment protects individuals against state action, not against wrongs done by individuals. *United States v. Guest,* 383 U.S. 745, 755, 86 S.Ct. 1170, 1176–77, 16 L.Ed.2d 239 (1966).

### (c)
### *The Commerce Clause—*
### *Tenth Amendment*

■ Plaintiff argues that the Commerce Clause authorizes Congress to prohibit housing discrimination against families with children relying on *Morgan v. HUD,* 985 F.2d 1451 (10th Cir.1993) [26] and *Seniors Civil Liberties Ass'n v. Kemp,* 965 F.2d 1030 (11th Cir.1992) [27] in which unanimous panels upheld the familial amendments against constitutional challenge under the commerce clause.

Defendant notes that the District Court for the Eastern District of Michigan in *Michigan Protection and Advocacy Service v. Babin,* 799 F.Supp. 695 (E.D.MI, 1992) observed that with the exception of one passing reference to the commerce clause, Congress does not appear to have discussed or made findings on the applicability of that clause as a source of power for enacting the familial amendments.

This Court finds that even though the congressional authority for the amendments is sparse, this Court will follow the Tenth Circuit in *Morgan* and the Eleventh Circuit in *Seniors,* especially in light of the elasticity with which the Supreme Court views congressional enactments under the Commerce Clause. See *Daniel v. Paul,* 395 U.S. 298, 305, 89 S.Ct. 1697, 1701, 23 L.Ed.2d 318 (1969).

### B

### *The Statute As Applied*

Defendant's also raise the issue of the constitutionality of the familial amendments,

as applied, to the defendants in this case who are private persons.

The Second Circuit by a divided panel, in *Boyd v. Lefrak Organization,* 509 F.2d 1110, *rehearing denied,* 517 F.2d 918 (2d Cir.), *cert. denied,* 423 U.S. 896, 96 S.Ct. 197, 46 L.Ed.2d 129 (1975) decided a case under the Fair Housing Act in which plaintiffs accused the defendant, a private landlord, of racial discrimination in the allocation of apartments. The Court stated:

A businessman's differential treatment of different economic groups is not necessarily racial discrimination and is not made so because minorities are statistically overrepresented in the poorer economic groups. The fact that differentiation in eligibility rates for defendants apartments is correlated with race proves merely that minorities tend to be poorer than is the general population. In order to utilize this correlation to establish a violation of the Fair Housing Act on the part of a private landlord, plaintiffs would have to show that there existed some demonstrable prejudicial treatment of minorities over and above that which is the inevitable result of disparity in income. [cite omitted] Just as this court will not impose even on the government an affirmative duty to construct low-income housing when the decision not to build is not racially motivated, [cite omitted] so we will not impose an affirmative duty on the private landlord to accept low-income tenants absent evidence that his motivation is racial rather than economic in origin.

This observation echos that of Judge Greene in *Brown v. Artery supra.*

The question herein presented is can this court, upon finding that defendants' housing occupation policy limits the availability of

---

**26.** The Morgan Court held 985 F.2d at p. 1455:

*Housing discrimination based on familial status surely interferes with the efficient allocation of housing resources and could hinder interstate relocation. Congress could reasonably seek to remove such impediments by relying on its commerce power to bar discrimination.*

**27.** The Seniors Court held 965 F.2d at p. 1034:

Because Congress had a rational basis for amending the Fair housing Act—namely the Nationwide problem caused by familial status discrimination in the housing market—and because the housing market affects interstate commerce, plaintiffs' Tenth Amendment claim fails.

apartments for families with children—a *prima facie* violation of the Act as plaintiff contends, issue an order that defendants—private persons—must expend $1.63 million dollars to upgrade their heating system or go out of business?

Elliott M. Miniberg, writing in the *Harvard Civil Rights Civil Liberties Law Review*, Harv.C.R.–C.L.L.Rev. Vol 11 comment at 170 (1976) explains that such a resolution would make Title VIII remedial legislation in the broadest sense by requiring positive efforts to provide housing opportunities for a protected class since failure to do so would deny them housing opportunities they may might otherwise have had. This poses a serious issue, he states, of the application of the Fair Housing Act and the intent of Congress when the Act is applied to private persons.

This Court need not decide this issue because it is of the opinion that defendant's have presented a *bona fide* compelling business justification for their policy.

### C.

### *Defendant's Justification*

Before dealing with the substantive arguments, this Court must first consider plaintiff's contention concerning the declarations of Gweynneth and Robert Weiss and Harvey H. Irby in support of the defense claims of justification.

The defendant owners state in their declarations they have been owners of the housing complex since 1966 when they purchased it as an investment. They leased the property to a lessee who had the responsibility for managing the complex. In 1971, the lessee defaulted and the owners took over and became resident managers. The property had been allowed to deteriorate during the course of the lessee's management. One of the chief tenant complaints was a lack of hot water. The owners determined that the only way to insure an adequate hot water supply was to limit the occupants of each four-plex to eleven person.[28]

From 1975 to 1977 the owners converted Grand Plaza to an all-adult community. When the familial amendment was enacted in 1988 they began renting to families with children.

Mr. Irby's report is set forth elsewhere in this opinion.

■ Plaintiff claims that because the owners history of the problem with hot water supply is hearsay and self-serving and they did not hire their expert, Mr. Irby—until three years after imposition of the occupancy limitation they have no evidence to substantiate their claims and such a *post hoc* justification should be accorded little weight in this Court.

This Court is hard pressed to understand how the statement of two owners directly involved with the management of a housing complex concerning tenant complaints about hot water are hearsay. Any statement made by the defendants as to the reasons they adopted the restrictive policy could be labelled self-serving. The most persuasive evidence of justification offered is the report of Mr. Irby, defendant's expert. This Court notes that in its research it read several decisions both by Courts and in HUD administrative decisions dismissing out of hand proffered justifications as *post hoc* or pretextual put forward for the purpose of litigation. However, there must be a distinction made between subjective justification, objective justifications that do not square with existing conditions[29] and objective justifications that

---

**28.** The policy established was:
 1) For the two bedroom—one bath unit—two people
 2) For the two bedroom—two bath unit—three people
 3) For the three bedroom—two bath unit—four people
 There were two units of two bedroom—one bath in each four-plex.

**29.** An example of justification in this category is found in *HUD v. Mountain Side Mobile Estates,*

(as yet unpublished opinion), HUD Secy. (Oct 30, 1993) (attached as Exhibit 19 to plaintiff's opposition to defendants motion). In that case defendant, owner of a mobile home park limited occupancy to three persons per unit. The justification proffered was to prevent over crowding at the park causing a strain on the sewer system. At the time of initiation of the policy the park had 320 people in occupancy whereas an official

are supported when measured against existing conditions. This case does not present subjective justifications which depend on the operation of a defendant's mind for either validity or veracity. Rather the defendants have submitted under penalty of perjury an analysis of the hot water system in place at the housing complex, made by a duly qualified professional engineer who opined (and gave his reasons) that the housing limitations imposed upon occupancy by defendants had a direct correlation to hot water capacity.

■ This Court finds that the declaration of Harvey H. Irby, P.E., attached to defendant's Motion for Summary Judgment contains uncontested issues of material fact as to the hot water capacity of the housing complex. Plaintiff, rather than having its own expert examine the hot water heating capacity at the facility, relies on perjorative statements in its pleadings and memoranda. Such exhortations are not admissible evidence nor do they create issues of fact capable of defeating an otherwise valid Motion for Summary Judgment. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978).

There is no consensus among the Circuits as to the standard to be applied in a disparate impact case against a private defendant. This Court is of the opinion that *Betsey v. Turtle Creek Associates*, 736 F.2d 983 (1984) (a pre-familial Amendment case where the violation of the Act was the disparate impact upon the racial characteristics of the property of a private landlord) most nearly resembles in theory of the instant case. The *Betsey* Court held that once plaintiff showed a disparate impact, it had established a *prima facie* case; "defendants must prove a business necessity sufficiently compelling to justify the challenged practice". *Ibid* at p. 988.[30] The Secretary of HUD utilizes the same test—the business necessity standard. *Secretary v. Mountain Side Mobile Estates Partnership;* (an unpublished opinion at-

tached as exhibit 19 to plaintiff's opposition to defendant's motion).

This Court finds that defendants have shown a compelling business necessity to limit the number of persons who may occupy an apartment in Grand Plaza. For a Court to order a 1.63 million dollar expenditure to upgrade the hot water capacity of the complex to accommodate families with children would be an unwarranted extension of Congressional intent in enacting the Familial Amendments to the Fair Housing Act. This conclusion is especially compelled on this record where there has been no proof that defendants intentionally discriminated against families with children and is under no public duty to furnish such families with housing accommodations.

## CONCLUSION

Plaintiff's motion for Summary Judgment is denied. This Court finds that even assuming plaintiff has proven a *prima facie* case of disparate impact, for the reasons given above this court accepts the uncontroverted declaration of Mr. Irby, defendant's engineer, and finds that the defendants limitation of occupancy in their complex is based upon a business necessity sufficiently compelling to justify the challenged practice. Defendant's Motion for Summary Judgment is granted.

IT IS SO ORDERED.

report demonstrated that the sewer system could support 916 residents.

**30.** In footnote 5, the Court referred to the four part tests set forth in *Metropolitan Housing Development Corp. v. Village of Arlington Heights*, 558 F.2d 1283 (7th Cir.1977). In the fourth

Circuit a substantially similar test was enunciated in *Smith v. Town of Clarkton*, 682 F.2d 1055 (4th Cir.1972). The *Betsey* Court observed that the *Clarkton* test has been applied only where a public body is the defendant and has no application to a private defendant.